Anthony F. DiANDRE, Plaintiff,

and

Metro Denver Maintenance Cleaning, Inc., Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

No. 90–1339.

United States Court of Appeals, Tenth Circuit.

July 7, 1992.

Steven W. Parks, Atty., Tax Div., U.S. Dept. of Justice (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Jonathan S. Cohen, Attys., Tax Div., U.S. Dept. of Justice, with him on the brief), Washington, D.C., for defendant-appellant.

Thomas G. Hodel of Doussard Hodel & Markman, P.C., Lakewood, Colo., for plaintiff-appellee.

Before MOORE, ANDERSON, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

In this appeal, we consider whether, and to what extent, section 6103 of the Internal Revenue Code ("I.R.C.") (26 U.S.C. § 6103) limits the scope of an Internal Revenue Service ("IRS") investigation. We hold that IRS circular letters sent to the taxpayer's customers requesting information on all payments made to the taxpayer did not violate section 6103. Accordingly, we reverse the district court's judgment awarding damages to the taxpayer under I.R.C. § 7431 (26 U.S.C. § 7431) based upon an alleged violation of I.R.C. § 6103.

## I.

This suit arises out of an IRS criminal investigation of a corporation, plaintiff-appellee Metro Denver Maintenance Cleaning, Inc. ("MDMCI"), and its owner, plaintiff Anthony F. DiAndrea,[1] concerning possible tax fraud. MDMCI provided janitorial services primarily to corporate customers.

In July 1985, the IRS began auditing DiAndrea and MDMCI. The investigation apparently remained dormant for some time, but resumed in early 1986. The agent assigned to the audit was unable to reconcile the corporation's records with its tax returns. In addition, he observed evidence of potential fraud: DiAndrea appeared to be intentionally uncooperative with the audit; there appeared to be two sets of profit and loss statements containing different figures for the same time period; DiAndrea allegedly admitted that he habitually inflated his travel and entertainment expense deductions; and DiAndrea appeared to be living beyond his means based on the income he declared on his tax returns. However, the agent did *not* suspect that MDMCI or DiAndrea was receiving unreported cash payments[2] from customers. Appellant's App. at 178. On the basis of the other badges of fraud, the agent referred the case to the IRS's Criminal Investigation Division ("CID").

In September 1986, Shirley Kish Thomas, a CID Special Agent, undertook the criminal investigation of MDMCI and of DiAndrea. Agent Thomas issued a summons to DiAndrea and MDMCI for all of MDMCI's books and records, bank statements, deposit slips and cancelled checks, information on all bank accounts, and all financial statements for the period under investigation.

As part of her investigation, Agent Thomas prepared a "circular letter," a type of form letter, to obtain information from MDMCI customers. This letter, which appeared on CID letterhead, provided in relevant part:

---

1. The parties agree that the plaintiff's name is "DiAndrea." The spelling used in the case caption ("DiAndre") is apparently a typographical error carried over from the original complaint.

2. Throughout this opinion, we use the term *cash payments* as shorthand for any undocumented payments not cleared through DiAndrea's or MDMCI's banks. Such payments might include, for example, cash, or checks cashed at the bank from which they were drawn.

The Internal Revenue Service is conducting an investigation of Metro Denver Maintenance, Inc., Lakewood, Colorado, for the years 1983 through 1985. Mr. DiAndrea is an officer of Metro Denver Maintenance whose address is 6800 West 6th Avenue, Lakewood, Colorado, 80215.

During the course of our investigation, we noted transactions between you and Metro Denver Maintenance, Inc. and/or Mr. DiAndrea for [the] previously mentioned period. As part of our investigation, we need to verify the purpose of these transactions. Your assistance is needed in determining all payments made to or on behalf of Metro Denver Maintenance and/or Mr. DiAndrea for the previously mentioned period. We would appreciate you furnishing the information indicated on Attachment 1, for use in a Federal tax matter.

Appellant's App. at 91. Attachment 1 requested the following information: "the date, check number, amount and form of all payment(s). By form of payment, it is meant if the payment(s) was made in cash, check, money order, etc." *Id.* at 94. Attachment 2, which was a form upon which the required information was to be entered, specified that the response should include "[a]ny payments made in the form of cash." *Id.* at 95.

Agent Thomas mailed this letter to all MDMCI customers. She subsequently issued a summons to all of DiAndrea's and MDMCI's banks for all records pertaining to either of them.

Using the bank records together with the MDMCI records, Agent Thomas and an accountant were substantially able to reconcile the records with MDMCI's and DiAndrea's tax returns. In addition, the bank records revealed that DiAndrea had several money market accounts, which explained his apparent ability to live beyond his means. The responses to the circular letters failed to reveal any further pertinent information. Agent Thomas ultimately concluded that the amount of potential underreporting of income did not meet the IRS's guidelines for criminal prosecution.

The criminal investigation was then terminated.

DiAndrea and MDMCI filed suit against the United States pursuant to I.R.C. § 7431. The plaintiffs alleged that by mailing the circular letters, Agent Thomas had wrongfully disclosed confidential tax return information in violation of I.R.C. § 6103. The district court conducted a bench trial, at the end of which it orally entered its findings of fact and conclusions of law.

In its ruling, the district court found that the circular letters did not disclose any of DiAndrea's personal return information. The court found, however, that the circular letters did disclose a number of items of MDMCI's return information: the name of the taxpayer (MDMCI), the taxpayer's address, that DiAndrea was an officer of the taxpayer, that the IRS was investigating the taxpayer, that it was a criminal investigation, and that IRS records revealed transactions between the taxpayer and the recipient of the circular letter. The court further found that certain information sought via the circular letters—the payments cleared through DiAndrea's and MDMCI's banks—was reasonably available using bank and corporate records. The court rejected the government's argument that the circular letters were necessary to obtain information on unrecorded cash payments that may have been received by DiAndrea or MDMCI for undocumented "side jobs." The court specifically noted the absence of any evidence indicating that customers were making undocumented cash payments, except for statements by a former employee that DiAndrea had large amounts of cash available to him. Moreover, the court found that normal IRS procedure required that its agents first attempt to account for discrepancies in a tax return using bank records prior to sending out circular letters. Because Agent Thomas was not focusing specifically on cash payments at the time she sent out the circular letters, the court concluded that the government's argument that cash payments could not be discovered through examination of the bank records was "a belated attempt to justify what the special agent

was doing at the time." Appellant's App. at 225.

The district court concluded that, in revealing MDMCI's return information, the disclosures violated section 6103 and that at least some of the information disclosed did not result from a good faith, but erroneous, interpretation of the section. The court accordingly awarded damages and entered judgment in favor of MDMCI. Because the circular letters had revealed none of DiAndrea's personal return information, the court dismissed DiAndrea's complaint.[3]

The United States filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

The statute under which DiAndrea and MDMCI brought suit, section 7431 of the Internal Revenue Code, permits a taxpayer to bring a civil action against the United States if a federal employee or official violates that taxpayer's rights under section 6103. I.R.C. § 7431(a)(1). However, section 7431 provides that the United States is not liable if the violation occurred because of "a good faith, but erroneous, interpretation of section 6103." I.R.C. § 7431(b). The government argues that no violation of section 6103 occurred. Alternatively, it argues that if a violation did occur, it resulted from a good faith, but erroneous, interpretation of the statute, and that therefore the government has no liability.

Congress enacted section 6103 of the Internal Revenue Code to protect taxpayers' privacy and to prevent the misuse of the confidential information obtained in the course of collecting taxes. *See* S.Rep. No. 938, 94th Cong., 2d Sess. 19, 317–18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3439, 3455, 3746–47. Section 6103(a)(1) provides, in relevant part:

Returns and return information shall be confidential, and except as authorized by [the Internal Revenue Code,] no officer or employee of the United States ...

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.

"Return information" is a term of art that includes, among other things, the taxpayer's identity, whether the IRS is investigating the taxpayer, and any information the IRS obtains with respect to a return. *See* I.R.C. § 6103(b)(2)(A).

Section 6103 provides a safe harbor for IRS agents that is relevant here:

An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of [the Internal Revenue Code].

I.R.C. § 6103(k)(6). Thus, an IRS agent may disclose return information during an investigation in order to obtain information, provided three requirements are met: (1) The information sought is "with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of [the Internal Revenue Code]." I.R.C. § 6103(k)(6).[4] (2) The information sought is "not otherwise reasonably available." *Id.* (3) It is necessary to make disclosures of return information in order to obtain the additional information sought. *Id.*

The parties do not dispute that Agent Thomas disclosed return information by sending out the circular letters. Whether, in doing so, she violated section 6103 depends on whether her actions fell within the safe harbor of section 6103(k)(6). Ac-

---

**3.** DiAndrea does not cross-appeal the district court's dismissal of his complaint and is therefore not a party to this appeal.

**4.** For the sake of brevity, we will refer to this requirement as whether the information sought relates to the determination of tax liability.

cordingly, we must determine whether the three requirements of section 6103(k)(6) were met.[5]

It should be self-evident that the first requirement—that the information sought related to determining tax liability—was met in this case. Information regarding all payments made to a taxpayer clearly relates to a determination of tax liability.

■ The parties dispute whether the second of these requirements was met: that the information sought must not be otherwise reasonably available. The circular letter requests information on "all payments," including those "made in cash." *See* Appellant's App. at 91, 94, 95. Cash payments do not appear to be the primary focus of the circular letter, but the letter clearly does request information on this subject. Information on receipt of undocumented cash payments was not available from any source other than from the payor, thereby meeting the second requirement. Although the circular letter also requested information that was potentially available from other sources, section 6103 does not prohibit requesting additional information beyond that not otherwise reasonably available if the additional request requires no further disclosure.

■ The final requirement—that the disclosures were necessary to obtain the information sought—was also met. There is no dispute that obtaining the information sought from MDMCI's customers required disclosure of all the return information contained in the circular letter, with the possible exceptions of the taxpayer's address and the fact that the tax investigation underway was criminal in nature. With regard to the former disclosure, given the necessity of revealing the taxpayer's identity, we hold that, under the circumstances of this case, disclosure of nonsensitive public information such as a business address to aid in identification was appropriate and necessary and therefore not a violation of section 6103. *Cf.* I.R.C. § 6103(b)(6) (tax-

payer identity includes name, mailing address, and taxpayer's identifying number). With regard to the latter disclosure, the district court concluded that the government was protected by the good faith exception of section 7431(b). *Accord Diamond v. United States*, 944 F.2d 431, 435–37 (8th Cir.1991). MDMCI does not appeal that ruling, so we do not review it here.

■ The district court strayed beyond the parameters of section 6103 when it sought to determine Agent Thomas' subjective intent and when it concluded that insufficient justification was shown to warrant delving into whether cash payments were made. That inquiry misperceives the function of section 6103(k)(6), which is to limit disclosures to those necessary to obtain the information sought. The section does not require the IRS to justify the appropriateness or need for the information sought so long as such information relates to the determination of tax liability and is not otherwise reasonably available. In other words, section 6103 does not provide a vehicle to test the probable cause or any other level of justification to investigate. *See Barrett v. United States*, 795 F.2d 446, 451 (5th Cir.1986) ("in a section 7431 action, the court does *not* inquire whether the information sought is necessary"); *cf. United States v. Powell*, 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964) (IRS does not require probable cause to issue summons); *United States v. MacKay*, 608 F.2d 830, 832 (10th Cir.1979) (same). The plain language of section 6103 does not limit in any way what information the IRS may seek in the course of an investigation. Section 6103 merely imposes certain restrictions on the IRS's ability to make disclosures in seeking that information. *See Barrett*, 795 F.2d at 451 ("[W]e do not question the right, wisdom, or necessity of a particular IRS investigation. We do question, however, the means of investigation, but only to the limited extent consistent with section 7431."). The three re-

---

**5.** To fall within the safe harbor of I.R.C. § 6103(k)(6), the IRS agent must also be seeking information "in connection with h[er] official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws." There is no dispute that Agent Thomas was doing so.

quirements that section 6103(k)(6) imposes to permit an IRS agent to disclose return information were all met here. Thus, we hold that section 6103 did not prevent Agent Thomas from seeking information regarding cash payments even if she did not suspect cash payments and even if the badges of fraud could be legitimately explained.

We do not hold—indeed, we do not mean even to imply—that the IRS may investigate any subject and seek any information it wishes based on mere whim, caprice, or malice. Section 6103(k)(6) permits disclosures of return information only to obtain information relating to tax liability. Whatever other limits there may be on the scope of an IRS investigation, *cf., e.g., United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 313, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978) ("the IRS must use its summons authority in good faith"); *Powell,* 379 U.S. at 58, 85 S.Ct. at 255 (court may refuse to enforce summons if issued for an improper purpose such as to harass or to apply pressure in a collateral matter); *United States v. Malnik,* 489 F.2d 682, 686 n. 4 (5th Cir.) ("enforcement of an unclear and overly broad summons would violate the Fourth Amendment's proscription of unreasonable searches and seizures"), *cert. denied,* 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974), it is not section 6103 that imposes those limits.

Because we conclude that no violation of section 6103 occurred, we need not and do not address the government's arguments regarding a good faith, but erroneous, interpretation of section 6103.

Accordingly, we REVERSE the judgment of the district court and REMAND with instructions to enter judgment for the United States.