Terry L. JONES, et al., Plaintiffs,

v.

UNITED STATES of America and Stephen L. Tinsley, Sandy Job–Rivera, Christie Stubbert, Charles Vonderschmitt, John Doe, Jane Roe, Richard Roe, and unknown Internal Revenue Service, Department of the Treasury, and Department of Justice Employees, Defendants.

No. 4:CV92–3029.

United States District Court,
D. Nebraska.

Sept. 19, 1994.

Robert B. Creager, Anderson, Creager & Wittstruck P.C., Lincoln, NE, for plaintiffs.

Thomas J. Monaghan, U.S. Atty., Sally R. Johnson, Asst. U.S. Atty., Lincoln, NE, Michael J. Salem, Gerald A. Role, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The following motions are pending before me: (1) a motion to compel (Filing 97), (2) a motion to stay dispositive motions pending appeal (Filing 96), (3) a motion to dismiss Count V pursuant to Federal Rule of Civil Procedure 12(b)(1) (Filing 79), and (4) a motion for summary judgment regarding Counts I, II and III submitted pursuant to Federal Rule of Civil Procedure 56 (Filing 73). I shall deny the motion to compel (Filing 97) and the motion to stay dispositive motions pending appeal (Filing 96). I shall grant in part and deny in part the motion to dismiss Count V (Filing 79), without prejudice to a motion for summary judgment on the merits, but I shall also grant leave to amend the complaint. I shall also grant in part and deny in part the motion for summary judgment regarding Counts I, II and III (Filing 73).

Terry L. Jones (Jones), his wife and entities owned by Jones and his wife sued the United States and various agents of the Internal Revenue Service (IRS), claiming: (1) in Counts I, II and III of their complaint that various IRS agents wrongfully disclosed tax "return information" in violation of 26 U.S.C. §§ 6103(a) and 7431, and (2) in Count V of the complaint that four IRS agents violated the plaintiffs' constitutional rights in obtaining and executing certain search warrants.[1] (Filing 1.)

### I.

On July 29, 1994, the Honorable Warren K. Urbom, United States Senior District Judge, refused the motion of one of the plaintiffs in this case to disclose the identities of confidential informants identified but not named in an application for search warrants submitted by Agent Stephen L. Tinsley (Agent Tinsley). Judge Urbom had previously ordered that an affidavit used in support of the application for search warrant be unsealed and a redacted copy of the affidavit provided to one of the plaintiffs in this case. After an *in camera* evidentiary hearing on the motion of one of the plaintiffs to disclose the identities of the confidential informants, Judge Urbom ruled that the plaintiff had failed to meet the burden of establishing materiality for the disclosure of the names of the confidential informants.

The plaintiffs now seek to require Agent Tinsley to reveal the names of the confidential informants in a deposition in this case. In the alternative, the plaintiffs request that I stay consideration of the dispositive motions in this case pending an appeal of Judge Urbom's order refusing to disclose the names of the confidential informants.

Judge Urbom provided me with a copy of his memorandum and order in the related case. I shall cause a copy of the order to be filed in this case and sealed. For

---

1. I note that the IRS has dropped its criminal investigation of the plaintiffs. (Filing 98, Dep. of

Stephen L. Tinsley, April 15, 1994, at 132–33.)

the reasons enumerated in Judge Urbom's memorandum and order in the related case, I agree that the names of the confidential informants should not be disclosed, and I will therefore deny the motion to compel Agent Tinsley to name them.[2] Likewise, I am persuaded that Judge Urbom's ruling in the related case was correct and that there is very little likelihood the plaintiffs will prevail in the appeal. As a consequence, I shall not stay consideration of the pending dispositive motions in this case.

## II.

I turn next to the motion to dismiss (Filing 79). The motion to dismiss was filed pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that this court lacks subject-matter jurisdiction for the reason that the individual IRS agents have qualified immunity from suit.[3]

The motion to dismiss targets Count V of the complaint. According to the parenthetical description used as its heading, Count V alleges "Constitutional Torts" (Filing 1 at 16). As such, it is obvious that Count V purports to assert a constitutional tort claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In such a case, the individual defendants performing discretionary acts are immune from damage suits if their conduct "does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As the United States Supreme Court noted in *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is en-

titled to dismissal before the commencement of discovery."

Before turning to the specifics of the complaint in this case, I would make two observations.

First, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Thus, a pleading which merely alleges a tort is insufficient to overcome the defense of qualified immunity; the pleading must allege a violation of a constitutional right which was clearly established at the time the defendant is alleged to have acted.

Second, "[d]amage actions against governmental officials are subject to a heightened pleading standard. The plaintiff must plead facts with sufficient precision to provide defendants with notice of the substance of the claim and enable them to prepare a response and, if appropriate, a summary judgment motion based upon qualified immunity." *Arnold v. Jones,* 891 F.2d 1370, 1373 n. 3 (8th Cir.1989) (citing *Brown v. Frey,* 889 F.2d 159, 170 (8th Cir.1989) (citing *Martin v. Malhoyt,* 830 F.2d 237, 254 (D.C.Cir.1987))).

Accordingly, I must determine whether Count V of the complaint (Filing 1) alleges one or more constitutional torts involving clearly established law with sufficient precision so as to allow the defendants to formulate a motion for summary judgment on qualified-immunity grounds. I turn to that task now.

Paragraph 50 of the complaint in this case alleges that one or more of the individual

---

**2.** I hasten to add that neither Judge Urbom nor I have precluded the plaintiffs from asking the IRS agents whether the agents disclosed information, such as the pendency of the execution of a search warrant, to named individuals. Moreover, it is clear from the briefs of the plaintiffs that they believe they know who the confidential informants are. There is nothing to preclude the plaintiffs from asking an IRS agent whether, for

example, the agent told John Doe of the existence of the search warrant prior to a certain date.

**3.** Oddly, the individual defendants have not phrased their motion in the alternative to give this court an opportunity to grant summary judgment in their favor. The defendants filed various affidavits (Filing 80) in support of their motion to dismiss.

federal defendants "wantonly, recklessly, haphazardly and/or negligently" conducted a tax investigation of the plaintiffs and, as a result, "conceived of the idea of obtaining search warrants for purposes of seizing all of Plaintiffs' business records, and most of the important Plaintiffs' computer hardware and software." This allegation fails to specify what constitutional rights of the plaintiffs were offended by the federal defendants and wholly fails to describe a violation of the Constitution. Accordingly, the motion to dismiss must be granted as to the allegations contained in paragraph 50.

Paragraph 52 of the complaint alleges that one or more of the individual federal defendants prepared and/or submitted affidavits in support of search warrants that either contained deliberate falsehoods or were made with reckless disregard for the truth which purported to show that one or more of the plaintiffs had "committed" tax evasion or filed false tax returns. This allegation is sufficient to assert a violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), but it is not sufficient to meet the heightened pleading requirements for the reason that the complaint fails to set forth what deliberate falsehoods were asserted or made with reckless disregard for the truth. Accordingly, the motion must be granted regarding this paragraph.

■ Paragraph 53b of the complaint alleges that the federal defendants failed to abide by the provisions of the Internal Revenue Code, regulations and manual with respect to the conduct of the investigation and by affirmatively taking steps that need not have been taken and by failing to verify the accuracy of information supplied to them before seizing the plaintiffs' records in violation of the Fifth Amendment. The failure of the individual federal defendants to "abide by" the provisions of the Internal Revenue Code, administrative regulations or manual, even if true, would not amount to a constitutional tort. *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."). Thus, the motion must be granted regarding this paragraph.

Paragraph 54a of the complaint alleges that the individual federal defendants conducted searches and seizures on premises not described in the search warrants, thereby violating the Fourth Amendment. While this is enough to assert a constitutional tort generally, the complaint fails to specify the premises in question or the dates of the alleged searches and seizures. Accordingly, the complaint fails to satisfy the heightened pleading standard required in cases such as this, and the motion must be granted regarding this paragraph.

■ Paragraphs 53a and 54e of the complaint generally allege that the individual federal defendants conducted illegal searches and seizures which were intentional violations of the plaintiffs' rights under the Fourth Amendment. While the allegations state a constitutional tort, the plaintiffs fail to specify when, where or in what manner the purported illegal searches and seizures took place. The plaintiffs have therefore failed to satisfy the heightened pleading standard and the motion must be granted regarding these paragraphs.

Paragraph 54b of the complaint alleges that one or more of the individual federal defendants seized documents and personal property which were not identified in the search warrants, thereby violating the Fourth Amendment. Once again, the plaintiffs failed to specify when such seizures took place, where they took place or what items were illegally seized. As a consequence, although a constitutional tort has been stated, the heightened-pleading standard has not been met and the motion must be granted regarding this paragraph.

Paragraph 54c of the complaint alleges that the defendants seized documents and personal property, including but not limited to computer hardware and software, which was not described in the search warrants. Once again, although a constitutional tort is stated, the plaintiffs failed to specify when, where or with respect to which property the alleged violations occurred. The motion must be granted regarding this paragraph.

■ Finally, paragraph 54d of the complaint alleges that through coercion, intimidation and threats the defendants forced one or more of the plaintiffs to permit searches of additional premises and seizures at such premises in violation of the Fourth Amendment. This allegation fails to identify the specific property searched or the specific evidence seized. It also fails to identify with particularity which of the plaintiffs were subjected to coercion, intimidation or threats. While such an allegation may allege a constitutional tort generally, the allegation does not meet the heightened-pleading standard. Accordingly, the motion must be granted regarding this paragraph.

■ I shall grant the motion to dismiss, but I shall not dismiss Count V with prejudice. It is conceivable that Count V could be pled with sufficient specificity so as to allege one or more constitutional violations involving a clearly established right. Therefore, in the exercise of my discretion I believe I should allow the plaintiffs a reasonable opportunity to amend. *Compare Tucker v. Callahan,* 867 F.2d 909, 915 (6th Cir.1989). Accordingly, I shall grant the plaintiffs a limited opportunity to amend Count V of the complaint and if an amended complaint is filed, the defendants will be privileged to file an appropriate dispositive motion.[4]

### III.

■ I turn next to the motion for summary judgment regarding Counts I, II and III (Filing 73). This motion is directed at the plaintiffs' factual allegation concerning the alleged wrongful disclosure of tax return information in violation of 26 U.S.C. §§ 6103 and 7431.

### A.

The plaintiffs allege that sometime on or before January 31, 1990, agents and employees of the United States began investigating Terry L. Jones, Jones Oil Company, Inc., (Jones Oil) and employees of Jones Oil. (Filing 1, Compl. ¶ 21.) This investigation is alleged to have concerned certain federal income tax filings, including matters relating to individual income taxes, corporate income taxes and motor fuel excise taxes. (*Id.*) The plaintiffs further allege that they received no notice of such investigations prior to February 1, 1990. (*Id.* ¶ 22.) It is further alleged that the United States installed wire taps on some of the plaintiffs' telephones. (*Id.* ¶ 23.)

It is claimed that sometime before February 1, 1990, agents and employees of the United States conducted interviews with various witnesses for purposes of furthering the alleged investigations and preparing affidavits in support of applications for search warrants. (*Id.* ¶ 24.) Search warrants were allegedly obtained from this court, (*id.* ¶ 25), and the affidavits in support thereof were allegedly sealed. (*Id.* ¶ 26.) The plaintiffs claim that neither the affidavits in support of the search warrants nor the search warrants themselves were publicized or made public before the morning of February 1, 1990. (*Id.*)

The complaint then attacks two types of disclosures. First, the plaintiffs allege that during the course of the investigation, *but prior to obtaining or executing the search warrants,* the defendants knowingly or by reason of negligence disclosed the existence of confidential tax return information to one or more of the following: Rock Port Oil Company, Inc., Ricardo A. Lucchino, Jr., Gary Ernst, Tricia Griggs, Gavin Gaskins, Ted Schuler, Bill Emanuel, friend of Leo

---

4. In the event the plaintiffs file the appropriate amended complaint, I wish to advise the parties of two things: First, if the defendants wish me to consider matters extrinsic to the pleadings, a motion for summary judgment should be filed in addition to a motion under Federal Rule of Civil Procedure 12. Second, the parties should recognize that there is a difference between a motion for summary judgment on qualified immunity grounds and a motion for summary judgment on the merits. If the defendants wish me to consider not only the issue of qualified immunity but also the merits of the case, they should take care to clearly articulate in their briefs and evidentiary submissions that they challenge the plaintiffs on the issue of qualified immunity and the merits of the plaintiffs' substantive allegations. For example, it is entirely possible that a well-pled complaint alleging a violation of *Franks v. Delaware* would survive a motion for summary judgment on qualified immunity but not survive a properly documented motion for summary judgment on the merits.

Curry's at state penitentiary, Jack Downs, Lincoln police personnel, Nebraska State Patrol personnel, Lincoln IRS personnel, Omaha IRS personnel and Brian Hull. (*Id.* ¶ 28.) Second, the complaint alleges that on or about February 1, 1990, the defendants wrongfully disclosed to Ricardo A. Lucchino, Jr., that a search warrant was to be served at the plaintiffs' business premises, (*id.* ¶ 33), whereupon Lucchino informed Gary Ernst of the search and the two men, both employees of Rock Port Oil Company, Inc., either personally or by directing others, notified various members of the news media and press, as well as customers and suppliers of Jones Oil. (*Id.* ¶ 34.)

### B.

Section 6103 of the Internal Revenue Code establishes a general rule that "returns" and "return information," as defined in the statute, shall be confidential. 26 U.S.C. § 6103(a) (Cum.Supp.1994). *See Church of Scientology of Cal. v. Internal Revenue Serv.,* 484 U.S. 9, 10, 108 S.Ct. 271, 276, 98 L.Ed.2d 228 (1987). The terms "return" and "return information" are specifically defined in subsection (b) of section 6103. Briefly summarized, "return information" includes: (a) a taxpayer's identity, (b) the nature, source or amount of the taxpayer's income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, tax deficiencies, overassessments or tax payments, (c) whether the taxpayer's return was, is or will be examined or subject to other investigation, or (d) any other data received by, prepared by or furnished to or collected by the Secretary of the Treasury with respect to tax returns or determination of the existence or possible existence of liability for any tax, penalty, interest, fine or forfeiture.

Section 6103 establishes the antidisclosure scheme which protects "returns" and "return information," but 26 U.S.C. § 7431 (1989) provides the civil remedy. Under section 7431, an officer or employee of the United States may render the United States liable if that officer "knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103." 26 U.S.C. § 7431 (1989).

In order to recover under section 7431, a taxpayer must prove the following three things by a preponderance of the evidence: (1) the disclosure by the officer or employee was not authorized (presumably by the taxpayer or the Secretary of the Treasury or his or her designate); (2) the disclosure was made "knowingly or by reason of negligence"; and (3) the disclosure was in violation of section 6103. *Fostvedt v. United States,* 824 F.Supp. 978, 983 (D.Colo.1993), *aff'd,* 16 F.3d 416 (1994) (table); *Flippo v. United States,* 670 F.Supp. 638, 641 (W.D.N.C.1987), *aff'd per curiam,* 849 F.2d 604 (4th Cir.1988).

There are numerous exceptions to the general rule that the United States is liable for disclosure of "return information." I shall briefly discuss four of those exceptions.

First, "the United States has absolutely no liability for good faith but erroneous interpretations of section 6103. 26 U.S.C.A. § 7431(b)." *Fostvedt,* 824 F.Supp. at 983. This statutory "good-faith" exception thus protects the United States and the individual defendants from liability where the alleged violation arose out of a good faith misunderstanding about section 6103. Accordingly, plaintiffs who seek to recover under section 7431 must plead and be prepared to prove bad faith. *Fostvedt,* 824 F.Supp. at 984–85.

Second, section 6103(k)(6) provides for an additional exception when three requirements are met: (1) the information is "with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of [the Internal Revenue Code]"; (2) the information sought is "not otherwise reasonably available"; and (3) it is necessary to make disclosure in order to obtain the additional information sought. *Fostvedt,* 824 F.Supp. at 938 (citing *DiAndre v. United States,* 968 F.2d 1049, 1052 (10th Cir.1992)). *See also* 26 C.F.R. § 301.6103(k)(6)–1 (1994).

Third, 26 U.S.C. § 6103(h)(4)(A) provides that returns or return information may be disclosed in a federal or state judicial pro-

ceeding pertaining to tax administration if the taxpayer is a party to the proceeding *or* if the proceeding arose out of or in connection with a determination of the taxpayer's civil or criminal liability.

Fourth, 26 U.S.C. § 6103(h)(1) provides that returns and return information shall without written request be open to inspection by or disclosure to officers and employees of the Treasury Department whose duties require such inspection or disclosure for tax-administration purposes.

■ The United States concedes, as it must, that in cases where a witness did not first contact the IRS, imparting to a witness information to the effect that a particular taxpayer is under investigation for possible tax law violations constitutes a "disclosure" of that taxpayer's "return information." *See DiAndre v. United States,* 968 F.2d 1049, 1051–53 (10th Cir.1992), *cert. denied sub nom. Metro Denver Maintenance Cleaning, Inc. v. United States,* — U.S. —, 113 S.Ct. 1843, 123 L.Ed.2d 468 (1993). But simply because such a disclosure has been made does not mean that section 6103 has been violated because, of course, section 6103 explicitly describes various exceptions authorizing disclosure. Moreover, even if there is a violation of section 6103, in order to recover damages against the United States pursuant to section 7431, there must be proof that the violation of section 6103 occurred "knowingly, or by reason of negligence" and not because of a "good faith" misunderstanding of section 6103.

### C.

I turn next to the question of whether there are undisputed material facts in this case which would allow me to grant the defendants' motion for summary judgment.

As Judge Finesilver noted in *Fostvedt,* 824 F.Supp. at 982, "[i]n a motion for summary judgment, the moving party's initial burden is slight" (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Essentially, the moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Fost-*

*vedt,* 824 F.Supp. at 982 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552). Once this has occurred, the burden of going forward shifts to the opposing party. *Id.* The "nonmovant" must establish that there are issues of material fact to be determined. *Fostvedt,* 824 F.Supp. at 982 (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment as the "nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion." *Fostvedt,* 824 F.Supp. at 982 (citation omitted). A summary judgment motion should be granted only when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of the evidence presented in the motion and the nonmovant's response. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

With the foregoing in mind, I herewith set forth what I have determined are the undisputed material facts regarding the resolution of the motion for summary judgment in this case:

1. For support of the motion for summary judgment defendants state (Filing 54) that they rely upon the declaration of Ricardo A. Lucchino, Jr. (Filing 55), the deposition of Terry L. Jones (Filing 57), the deposition of Patricia K. Jones (Filing 56), the deposition of Jones Oil Company, Inc., (Filing 58) and the deposition of John Sims (Filing 59).

2. For opposition to the motion for summary judgment the plaintiffs state (Filing 99) that they rely upon the declaration of Robert B. Creager with affidavit exhibits (Filing 76, Ex. 1–10), the deposition of Stephen Tinsley (part of Filing 98 (three parts)), the deposition of Gary Ernst (part of Filing 99), the deposition of Ricardo Lucchino (part of Filing 99), the deposition of Angelo Stennis (part of Filing 99), the deposition of John Sims (Filing 59), the affidavit of Terry L. Jones (part of Filing 99), and the deposition of Terry L. Jones (Filing 57).

3. Certain persons who became confidential informants for the IRS called the IRS in Omaha, Nebraska, with information about

one or more plaintiffs and irregularities with respect to motor fuel excise taxes. (Stennis Dep. 12–15; 23–26).

4. These contacts were in no way initiated by the IRS and the IRS did not then have any investigatory interest in plaintiffs. (*Id.;* Tinsley Dep. dated April 15, 1994, at 86–87.)

5. Sometime thereafter IRS agents in Indiana contacted IRS agents in Nebraska asking for information about one or more plaintiffs and irregularities with respect to motor fuel excise taxes, and an IRS agent in Omaha provided the IRS agent in Indiana with the names of the confidential informants who had earlier called the IRS agents in Omaha. (Stennis Dep. at 13, 29.)

6. The IRS agents in Indiana had begun to gather information about one or more plaintiffs and possible motor fuel excise tax irregularities when an Indiana resident recorded a conversation with Leo Curry, a Jones Oil representative, who "was counseling a customer on how to blend this mineral oil in order to beat the federal excise taxes." (Tinsley Dep. dated April 15, 1994, at 33–35.)

7. Indiana IRS agents came to Nebraska and began to gather information, and according to the agent in charge interviewed the confidential informants who had previously contacted the Omaha IRS agents. (*Id.* at 37).

8. At this time, according to the agent in charge, no "third party witnesses" were interviewed except those who were confidential informants and who had independently contacted the IRS in Omaha, Nebraska. (*Id.* at 37–38.)

9. All of the persons who contacted the IRS requested and received assurances of confidentiality in terms of their identity. (*Id.* at 37.)

10. The agent in charge testified that except for the confidential informants no third party witnesses were contacted because no "numbered investigation" had been authorized regarding Jones Oil as the IRS "didn't know whether Leo Curry was doing it on his own." (*Id.* at 38–40.)

11. During this period of time, the agent in charge understood IRS regulations would not permit him to "initiate the contact" with witnesses but if "[they come] to us, we can follow up." (*Id.* at 85.)

12. After interviewing the confidential informants, and gathering other information that was generally available to the public, IRS agent Tinsley prepared and submitted to this court, on January 31, 1990, an application for search warrants for the business offices of Jones Oil and the residence of Jace Nore, which affidavits were not generally available to the public from the court until after February 1, 1990. (Application for Search Warrant, part of Filing 99).

13. Judge Urbom signed the requested search warrants on January 31, 1990, at 11:11 a.m. and authorized the search to be conducted on or before February 1, 1990. (Filing 83, Ex. A & C.)

14. On the afternoon of January 31, 1990, and on the morning of February 1, 1990, "pre-raid" meetings, held for the purpose of planning the execution of the search warrants, were held with various law enforcement agents, which included both state and federal officers. (Tinsley Dep. dated April 15, 1994, at 88–93 & Ex. 2.) All those present were told not to disclose that there was either an investigation or that search warrants were to be served. (*Id.* at 92.)

15. All those present at the "pre-raid" meeting were also told that "we did not want the press there at all [but] if the press happened to show up, all inquiries by the press should be directed to Allen Everett at the U.S. Attorney's office." (*Id.* at 93.)

16. The briefings were bifurcated so that local law enforcement officers who did not generally deal in tax matters were present for and briefed on issues dealing with crowd control and the like, but only tax law enforcement officers were present when "we talked about the actual records and assignments and things like that." (*Id.* at 91–92.)

17. The search warrants were executed at about 7:00 a.m. on February 1, 1990. (*Id.* at 98–99.)

18. At some time on February 1, 1990, the exact time being uncertain, members of

the press, including a television camera crew, were present at the Jones Oil premises outside of the building (*Id.* at 99–100.)

19. Steve Bowen has given an affidavit that a reporter for a television station told him in February or March of 1992 in response to a question about "how the station knew the raid was occurring" that "the information was called into the station but that although she knew the source, she could not reveal who it happened to be." (Filing 76, Ex. 2.)

20. John Sims, who was a friend of Terry Jones, a tenant of Jones Oil or Terry Jones, and former employee of Jones Oil, has testified that early on the morning of the raid, the exact time being uncertain, he was called at home by a person he believed to be Ricardo Lucchino's brother who told him: "You'd better get to work. Something is happening at Jones." (Sims Dep. 17–21.)

21. Ricardo Lucchino is married to Sims' oldest sister. (*Id.* at 20.)

22. Later that morning Sims received a call from Ricardo Lucchino at about 10:00 or 11:00 a.m., who was "wondering what was going on [at Jones Oil]" and it was Sims' impression that Lucchino was "acting real naive". (*Id.* at 44–45.)

23. Later that day, probably about 7:30 in the evening, Sims testified that he taped part of a telephone conversation with Ricardo Lucchino in regard to Jones Oil and Terry Jones, at which time Sims was "told [by Lucchino] there was, supposedly, duplicate books or duplicate computer records or something like that or that there was some hidden safe that this cash of money and whatever, you know." (*Id.* at 29.)

24. In this evening conversation it appeared to Sims that Lucchino had "a good idea why they [the IRS] were there" and the conversation was "pretty much like a victory dance", (*id.* at 26–27), although Sims testified that Lucchino did *not* disclose the source of his information. (*Id.* at 41.)

25. The tape was later destroyed by Sims' wife because she thought it was wrong to tape the conversation and no copies or transcriptions were made. (*Id.* at 13–14.)

26. However, Sims testified that before the tape was destroyed Sims played the tape for Terry Jones on the same evening it was recorded. (*Id.* at 63–65.)

27. Sims further testified that sometime before February 1, 1990, the exact date being unclear, Lucchino called Sims and told him "something was going to happen at Jones Oil," but Lucchino did not specify what was going to happen and there was no specification of a tax link. (*Id.* at 49–50.)

28. Terry Jones has sworn that he in fact listened to the tape of Sims' conversation with Lucchino on the evening of the execution of the search warrant, and he recalled the following information from the tape:

The voices on the tape consisted of a telephone conversation between John Sims and Rich Lucchino that was obviously recorded earlier that same day. Rick Lucchino told John Sims that he had contacted Television Station WOWTV and notified them that there was going to be a raid on Jones Oil Company, Inc. Lucchino was extremely proud of himself for his efforts in causing the demise of Jones Oil Company, Inc. Lucchino took full credit for what had happened to Affiant and he indicated that he had given the IRS information, which ultimately caused Affiant all of his problems.

(Filing 76, Ex. 1 ¶ 3; Terry Jones Dep. at 22–23; 27–28.)

29. Lucchino had worked for Jones Oil prior to the execution of the search warrant. (Terry Jones Dep. at 24.)

30. Aside from the information that Jones received from Sims about Lucchino, Jones has no facts establishing that any unauthorized disclosures of return information took place prior to the execution of the search warrants. (*Id.* at 39–40). Patricia Jones and Jones Oil Company have no independent knowledge of these facts beyond what Terry Jones knows. (Patricia K. Jones Dep. at 34–35; Rule 30(b)(6) Dep. of Jones Oil at 5.)

31. After the search warrants were executed, it is undisputed that numerous individuals were interviewed regarding a criminal investigation of Jones Oil by IRS agents because a "numbered investigation" was

started by the IRS as a result of the execution of search warrants. (Tinsely Dep. dated April 15, 1994, at 125–26 & Ex. 3.)[5]

32. Indeed the undisputed evidence is that the IRS formally notified Terry Jones that Jones Oil was the subject of a criminal investigation on March 30, 1990. (Terry Jones Dep., Ex. 1.)

33. The complaint does not allege that any of these post search warrant execution interviews were unlawful. (Filing 1, ¶¶ 21–46.)

34. Agent Tinsely, the agent in charge, has testified that:

As a representative of the government, I have knowledge from a telephone conversation between Special Agent Stennis and Special Agent Tinsley that a confidential informant had been advised that a search warrant was going to be executed.

(Tinsely Dep. dated April 15, 1994, at 95.)

35. Tinsley testified, however, that at this time: "Special Agent Stennis denies telling anyone about the existence of the warrant." (*Id.* at 96.)

36. Tinsley testified that a disclosure of the existence of a search warrant to a confidential informant would be appropriate if it was made to protect the safety of the informant. (*Id.* at 96–97.)

37. Special Agent Stennis in his deposition answered, "No, not that I recall" when asked whether he disclosed to anyone not related to law enforcement prior to February 1, 1990, that a search warrant was to be served on the president of Jones Oil. (Stennis Dep. at 39.)

38. By declaration and deposition Ricardo A. Lucchino stated that he was not told about the search warrants or that search warrants would be executed. (Filing 55, ¶¶ 6 & 7; Lucchino Dep. at 16.)

39. Lucchino did acknowledge that he was contacted by IRS agents before February 1, 1990, but he denied that he was told that an investigation was ongoing regarding Jones Oil. (Lucchino Dep. at 5–6; 14–16.)

40. Gary Ernst, a former partner with Terry Jones, testified that he was interviewed by the IRS, that he did not think that he was interviewed before the search warrant was executed, and that he was not told that the warrant was going to be executed. (Ernst Dep. at 15.)

41. Ernst, who worked at the same competing business as Lucchino and Tricia Griggs, did state that Lucchino and Griggs had been interviewed by the IRS before February 1, 1990. (*Id.* at 12–13.)

42. No party endorsed the deposition of Griggs as evidence regarding the motion for summary judgment, but her deposition indicates that while she was not sure when she was interviewed, she was interviewed by the IRS agents who did not tell her Jones Oil was under investigation. (Griggs Dep. at 27 (part of filing 99).)

43. Griggs stated: "Actually when they came I thought they were investigating me." (*Id.* at 24.)

**D.**

With one exception, I conclude that the motion for summary judgment must be granted as to all the allegations of the complaint regarding the claimed violations of sections 6103 and 7431. My reasons for this conclusion are set forth in the following portions of this memorandum.

**(1)**

With the exception of the alleged disclosure of the search warrant to Lucchino, I conclude that there are no material facts in dispute, and that no reasonable finder of fact could make the findings necessary to establish liability under sections 6103 and 7431

---

5. None of the "third-party witness" affidavits submitted by plaintiffs state or otherwise suggest that such persons were interviewed by the IRS *before* the execution of the search warrants. (Filing 76, Ex. 2–10.) The affidavits are either silent as to the time or they explicitly state that the interviews took place *after* the execution of the search warrants (e.g., Filing 76, Ex. 3 ¶ 3, 6 ¶ 2). Accordingly, these affidavits do not establish a material disputed fact about whether the interviews took place *before* the search warrants were executed. It is, of course, critical that plaintiffs come forward with specific evidence on the alleged date of the unlawful disclosure. *Fostvedt,* 824 F.Supp. at 985–86.

respecting the allegations of Counts I, II and III of the complaint. I come to this conclusion for the following reasons.

First, although it is clear that individuals were interviewed *after* the search warrants were executed, the complaint does not allege that such interviews constituted a violation of sections 6103 and 7431. Accordingly, evidence of such interviews simply does not suggest, let alone prove, that the agents disclosed the existence of the investigation *prior* to the execution of the search warrant.[6]

Second, it is undisputed that law enforcement officers were apprised of the existence of the search warrants at two "pre-raid" meetings. However, these disclosures were authorized pursuant to 26 U.S.C. § 6103(h)(4)(A), which provides that return information may be disclosed in a federal judicial proceeding if the proceeding arose out of or in connection with determination of a taxpayer's civil or criminal liability. Clearly the application for search warrants in this case was connected with a determination of plaintiffs' criminal liability in this case. The execution of the search warrant was authorized in a federal judicial proceeding, and it follows that disclosures necessary to carry out the judicial authorization fit the exception found in section 6103(h)(4)(A). Moreover, I note that during the pre-raid briefings all of the law enforcement authorities were instructed not to disclose information relative to the search warrants to the public, and local law enforcement officers did not participate in briefings dealing with anything other than crowd control, and the like.

Third, IRS agents admit interviewing various confidential informants before the search warrants were executed. However, the record is undisputed that the IRS agents did not first initiate contacts with these confidential informants, but rather followed up on the informants' initial contacts by interviewing

them. There is nothing in the plain language of the two relevant statutes which precludes an IRS agent from discussing with a citizen information provided by that citizen if the information is volunteered by the citizen.

In particular I emphasize that there is no *evidence* that IRS agents disclosed any "return information" *to* the confidential informants. Taking volunteered information *from* confidential informants simply does not suggest, let alone prove, that "return information" was disclosed *to* the informants in return. So far as the record reflects, nothing was discussed with the confidential informants that the informants had not first brought to the attention of the IRS. There is therefore simply no evidence that IRS agents made available to the confidential informants any "returns" or "return information" as defined in subsection (b) of section 6103.

Fourth, it is obvious that some "return information" was disclosed within the Treasury Department itself. But such disclosures are authorized pursuant to the exception found at 26 U.S.C. § 6103(h)(1). That exception authorizes disclosure of information without a written request to Treasury Department officials whose duties require such inspection or disclosure for tax-administration purposes. There is no evidence that any disclosures within the IRS fell outside this exemption.

Finally, and to my mind most importantly, if there was a disclosure of "return" or "return information," with the exception noted below, there is not the slightest evidence that such disclosures were "knowingly" made, "negligently" made, or not done upon a "good faith" interpretation of section 6103. 26 U.S.C. § 7431.

---

6. Plaintiffs have two very good reasons for *not* making such an allegation. It is undisputed that *after* the search warrants were executed the investigation received a lot of publicity because the news media was present during the execution of the search warrants. It is this publicity which is claimed to have injured plaintiffs. Hence, even if it were a violation of the pertinent statutes to interview witnesses after the search warrants were executed, it would be inconsistent to allege

that these interviews proximately caused the damage the plaintiffs claim to have suffered by virtue of the unrelated press coverage. More to the point, these subsequent interviews undoubtedly qualified for the exception found in section 6103(k)(6) as the individuals interviewed appear to have been employees or former employees of Jones Oil who had information relevant to the documents which were seized pursuant to the search warrants. (Filing 76, Ex. 3–10.)

(2)

I turn next to the one area in which I believe a trial may conceivably be necessary. Agent Tinsley indicated that Agent Stennis once told him he (Stennis) had told a confidential informant that "a search warrant was going to be executed." (Tinsley Dep. dated April 15, 1994, at 95.) If true, Stennis' admission is consistent with the testimony of Terry Jones concerning his recollection of a tape-recorded conversation involving Lucchino and Sims. According to Sims, he did in fact record a conversation with Lucchino on the evening the search warrants were executed, and he made the tape recording available to Jones that same evening. Jones' testimony was that "Rick Lucchino told John Sims that he had contacted Television Station WOWTV and notified them *that there was going to be a raid on Jones Oil Company, Inc.*" (Filing 74, Ex. 1 ¶ 3.) According to the affidavit of Mr. Bowen, a WOW–TV reporter told Bowen that information about the raid had been called into the station. In addition, Sims testified that Lucchino's brother telephoned him early in the morning on the day the search warrants were executed and told him, "You'd better get to work. Something is happening at Jones." (Sims Dep. at 18–21.) According to Sims, Lucchino had told him a number of days before execution of the warrants that "something was going to happen at Jones Oil." (*Id.* at 49–50.)

I have therefore concluded that there is a material fact in dispute as to whether or not the existence of the search warrant was disclosed to Lucchino prior to its execution and, if so, under what circumstances such disclosure was made. In this connection, I note that the government does *not* contend that such a disclosure would have been lawful. Rather, the government, based upon Lucchino's sworn denial, contends that no such disclosure ever took place. While such a disclosure might not necessarily violate the relevant statutes, without knowing whether such a disclosure took place and, if so, the circumstances of the disclosure, summary judgment at this point would be ill advised.

Insofar as Lucchino's denial is concerned, there is obviously a factual dispute about whether Lucchino is telling the truth given what Jones claimed to have heard Lucchino state on the tape. That Lucchino may not be telling the truth is a distinct possibility given the testimony of Agent Tinsley regarding Agent Stennis' supposed admission that a confidential informant was told about the warrant. Consequently, I conclude that summary judgment should be denied insofar as the allegations of the complaint state that on or about February 1, 1990, the defendants wrongfully disclosed to Ricardo A. Lucchino, Jr., that a search warrant was to be served at the plaintiffs' business premises.

Accordingly,

IT IS ORDERED that:

(1) The motion to compel (Filing 97) and the motion to stay dispositive motions pending appeal (Filing 96) are denied;

(2) The motion to dismiss Count V pursuant to Federal Rule of Civil Procedure 12(b)(1) (Filing 79) is granted, but the plaintiffs are given ten (10) days from the date of this order in which to file an amended complaint alleging one or more constitutional torts involving clearly established law with sufficient precision so as to allow the defendants to formulate a motion for summary judgment on qualified-immunity grounds;

(3) The court conditionally determines that pursuant to Federal Rule of Civil Procedure 15(c)(2) such an amended complaint will relate back to the date of the original pleading;

(4) The motion for summary judgment regarding Counts I, II and III submitted pursuant to Federal Rule of Civil Procedure 56 (Filing 73):

(a) is denied as to the allegation of Counts I, II and III concerning whether or not the defendants on or about February 1, 1990, wrongfully disclosed to Ricardo A. Lucchino, Jr., that a search warrant was to be served at the plaintiffs' business premises; and

(b) is otherwise granted;

(5) The parties are advised that the partial granting of the motions to dismiss and for summary judgment is not intended as a judgment pursuant to Federal Rule of Civil Procedure 54(b);

(6) If an amended complaint is filed in this case, the defendants shall have twenty (20) days thereafter in which to file a responsive pleading, and thirty (30) days thereafter in which to file appropriate dispositive motions;

(7) The Clerk of the Court is directed to file *under seal* the attached copy of Judge Urbom's Memorandum and Order on Defendant's Motion to Disclose Identities of Confidential Informants, CR 90–10M (WKU), dated July 29, 1994, in the court file in this case.