that date, the Court will reinstitute the current Case Management Order.

**Terry L. JONES, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 4:CV92–3029.

United States District Court,
D. Nebraska.

Feb. 19, 1997.

Robert B. Creager, Anderson, Creager & Wittstruck P.C., Lincoln, NE, for Plaintiffs.

Thomas J. Monaghan, United States Attorney, Sally R. Johnson, Assistant United States Attorney, Lincoln, NE, Michael J. Salem, Gerald A. Role, Trial Attorneys, Tax Division, U.S. Department of Justice, Washington, D.C. for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Imposing upon the government the burden to prove "good faith" pursuant to 26 U.S.C. § 7431(b), the Court of Appeals partially reversed my decision in *Jones v. United States,* 898 F.Supp. 1360 (D.Neb.1995) (*Jones I*) (holding that: (1) an agent's disclosure to a confidential informant that a search warrant was going to be executed and that informant should report any threats from taxpayer to the agent was disclosure of tax return information prohibited by 26 U.S.C. § 7431(a)(1); (2) the requirement for use of an "investigative disclosure" of tax return information under 26 U.S.C. § 6103(k)(6) was not proven by government; (3) under 26 U.S.C. § 7431(b) taxpayer had the burden to prove the agent's disclosure was not based upon a "good faith" misinterpretation of section 6103(k)(6); (4) taxpayers had failed to prove that agent acted in "bad faith"). *Jones v. United States,* 97 F.3d 1121, 1124–25 (8th Cir.1996) (*Jones II*) (affirming on points one and two; reversing on point three and assigning the burden of proof to the government; remanding for a redetermination of point four because of the imposition of the burden of proof upon the government).[1] The Court of Appeals specifically instructed me to decide whether the United States has satisfied its burden to prove "that Agent Stennis's actions met the objective standard of 'good faith.'" *Jones II,* 97 F.3d at 1125.

After considering the supplemental briefs of the parties, I have completed the task

---

**1.** The Court of Appeals stated: "The burden of pleading and proving good faith under section 7431 rests with the government, not the complaining party." *Id.* at 1124.

assigned to me by the Court of Appeals. I now find and conclude that the United States has failed to satisfy its burden to prove that Agent Stennis "met the objective standard of 'good faith.'" *Id.*

## I.

As a general matter, the facts are set forth in detail in my prior opinion. *Jones I*, 898 F.Supp. at 1365–72 (part I.B., findings 1–82). There is no need to repeat these facts here, and I simply incorporate them by reference. Two additional comments are, however, appropriate.

First, the Court of Appeals looked at the facts and concluded that:

Agent Stennis testified that he did not consult IRS manuals or anyone in the IRS, including Agent Tinsley, before notifying the informant of the impending search; nor could he cite the specific statute governing disclosure. He stated that he had been educated about the provision and that he believed an agent had a right to disclose return information to an informant if the agent believed it necessary for the informant's safety, a condition he felt had been satisfied.

*Jones II*, 97 F.3d at 1123.

I am bound by the Court of Appeals' construction of the evidence. Even if I was not bound by this construction, the Court's summary is an accurate one.

Second, after the remand, the parties stipulated that "Stennis has never had any direct personal contact or run-ins of any nature or kind with Terry Jones." (Filing 156 ¶ 5.)[2] This agreement slightly alters my previous fact finding. *See Jones I*, 898 F.Supp. at 1368 (part I.B., finding 32 (second sentence)). The facts as previously found must now be modified according to the stipulation. I approve the stipulation, and amend my previous factual findings to conform to the stipulation.

**2.** Aside from this stipulation, neither side wished to present additional evidence after the remand.

**3.** Stennis admitted making a disclosure, but denied that he told the informant that a search warrant was going to be executed. Relying to a

## II.

The government has relied solely upon section 6103(k)(6)—authorizing disclosure for investigative purposes—for its argument that Stennis acted in objective good faith. *Jones I*, 898 F.Supp. at 1373 & n. 9. In essence, the government argues that a reasonable agent could have believed that section 6103(k)(6) authorized the disclosure that Stennis made, and therefore Stennis' disclosure was objectively made in good faith.

The Court of Appeals remanded for me to decide whether the government has satisfied its burden of proof on this claim. In so doing, the Court of Appeals pointedly stated that the United States has "strong evidence" to overcome. *Jones II*, 97 F.3d at 1125. The Court came to this conclusion because: "An agent's failure to consult the statutory language as interpreted and reflected in IRS regulations and manuals prior to an improper disclosure of return information is strong evidence that the interpretation of the statute was not in good faith." *Id.* As a district judge, I am required to take this admonition very seriously. Accordingly, I have given significant weight to the Court of Appeals' declaration.

While Stennis believed as a result of his training that a disclosure[3] was authorized, the evidence is undisputed that he did not consult the statute, the regulations, the manual or the agent who was in charge of the investigation before making the disclosure. Had Stennis consulted these sources, rather than relying upon his recollection of the law, he would have learned that he was authorized to make an investigative disclosure *only* after he had made a careful assessment of the facts and circumstances of the particular case confronting him to determine whether the disclosure was "necessary."

The fact that Stennis relied upon his generalized impression of what the law permitted rather than carefully checking to see whether his impression conformed to the law,

large extent on Agent Tinsley's contrary testimony, I previously found that Stennis had in fact made the disclosure that a search warrant "was going to be executed" at Jones Oil. *Jones I*, 898 F.Supp. at 1377–79.

in the absence of evidence to explain or justify this omission, requires me to conclude that the government has failed in its burden to show that Stennis acted in objective good faith. In other words, an objectively reasonable agent would have checked to see whether his impressions conformed to the law, and, had a reasonable agent done so, the law, despite other ambiguities, would have instructed the agent to be very cautious about revealing tax return information about a taxpayer to a confidential informant. It is Stennis' unexplained failure to compare his general impression against "the statutory language as interpreted and reflected in IRS regulations and manuals" which provides uncontested and "strong evidence that the interpretation of the statute was not in [objective] good faith." *Jones II*, 97 F.3d at 1125.[4]

Four specific observations are in order. I turn to those points next.

First, while many elements of the "investigative disclosure" exemption were not "clearly established" when Stennis acted, *Jones I*, 898 F.Supp. at 1383–85, it was "clearly established" that "investigative disclosures" were the exception and not the rule. *Id.* at 1373–74 & nn. 9–11. For example, 26 U.S.C. § 6103(k)(6) has long provided that disclosures under that section could be made "*only in such situations and under such conditions as the Secretary may prescribe by regulation.*" 26 U.S.C. § 6103(k)(6) (1989 & Cum. Supp.1996) (emphasis added). *See also Diamond v. United States*, 944 F.2d 431, 436 (8th Cir.1991) (stating that "the Internal Revenue Code rules that disclosure be limited to the extent necessary to obtain information, as prescribed by the Secretary of the Treasury") (citing 26 U.S.C. § 6103(k)(6) (1988)). The Secretary's regulation has provided since 1980 that "[d]isclosure ... should be made, however, *only if [the] necessary information cannot, under the facts and circumstances of the particular case, otherwise reasonably be obtained....*" 26 C.F.R. § 301.6103(k)(6)–1(a) & (b) at 44–45 (1996) (quoting 45 Fed.Reg. 65,569 (1980)) (emphasis added). The manual prepared for IRS

agents repeats this regulation. *Jones I*, 898 F.Supp. at 1384 (citing *Internal Revenue Manual* ¶ 348.3 (5–12–92) (Disclosures for Investigative Purposes)). In addition, the Manual cautions agents that to "the extent that necessary information ... may be secured without making a disclosure ... and without seriously impairing a tax investigation, this should be done." *Id.* (quoting *Internal Revenue Manual* ¶ 348.3(2)).

Consequently, at the time Stennis acted, a taxpayer had a clearly established right to expect that the "investigative disclosure" exception would not be broadly interpreted to evade the overarching confidentiality provisions of section 6103(a). Every available resource stressed the point that the exception could not lawfully be used to swallow the general rule.

Moreover, the fact that Stennis did not examine the specific language of the exemption is evidence that he did not act in good faith. A reasonable agent would have consulted the available resources, like the IRS regulation on investigative disclosures, and thus would have known that the exception required a careful case-specific balancing assessment prior to disclosure to determine whether a disclosure was actually "necessary."

Second, if Stennis had checked, he would have learned not only that he was required to make a careful "necessity" determination, but also that there was no explicit authorization permitting him to make a disclosure to an informant. *Jones I*, 898 F.Supp. at 1384 (finding that the statute, the regulation and the case law failed to specifically address disclosures to confidential informants). A reasonable agent in Stennis' position would have been particularly cautious given the absence of explicit authority to make disclosures to confidential informants. The failure to look for explicit authority to make a disclosure to an informant is additional evidence that Stennis did not act in "objective good faith."

(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). *See also Jones I*, 898 F.Supp. at 1383 & n. 18.

---

4. The test is objective and focuses not upon Stennis' subjective intentions, but what a reasonable agent would have done under similar circumstances. *Jones II*, 97 F.3d at 1124 & n. 7

Third, the fact that Stennis did not seek authorization to make the disclosure from Agent Tinsley (the agent-in-charge), *id.* at 1367, and the fact that this failure "upset" and "surprised" Tinsley, *id.* at 1368, is probative evidence that Stennis was not acting in an objectively reasonable manner. While Tinsley might have deferred to Stennis if Stennis had consulted him, *id.* at 1369, the normal IRS practice was for a subordinate agent to consult with the agent-in-charge before making important decisions about informants. *Id.* at 1368. This practice prevailed so that the agent-in-charge, whom the IRS would hold responsible if something went wrong, could take appropriate precautions. *Id.* Importantly, Tinsley was "surprised" because Stennis had not previously expressed any concern about the safety of the informants. *Id.* Tinsley's "surprise" suggests that Stennis' disclosure justification was pretextual. In the end, the fact that Stennis deviated from the normal practice of consulting with his superiors is more evidence that Stennis was not acting as a reasonable agent would have when attempting in objective good faith to understand and apply section 6103(k)(6).

Finally, because neither Stennis nor any other witness specifically articulated why the "necessity" prong of section 6103(k)(6) might plausibly apply to the facts and circumstances of this case, I am left to speculate why a mythical reasonable agent, acting in objective good faith, would have thought the disclosure was permitted. *See Jones I,* 898 F.Supp. at 1381–82 ("because neither Stennis nor any other witness explained why it was in fact 'necessary' to make the specific disclosure that I have found was made, I simply cannot determine whether the disclosure was actually 'necessary' ").[5]

Why, for example, would a reasonable agent have a safety concern for a confidential informant which supposedly justified disclosure when, as Tinsley stated at trial, informant safety had never before been an issue

for the agents despite many meetings with the informants? *Id.* at 1368. Even if safety was a legitimate concern, why would a reasonable agent think it necessary to alert the informant about the search warrant when, as Tinsley implicitly suggested at trial, a reasonable alternative to disclosure was placing the informant in a "safe house?" *Id.* at 1368. These, and many other pertinent questions, are left unexplained by the government's proof.

When the burden of proof (which I understand includes the burden of persuasion) fell upon the plaintiffs, I was justified in construing the evidence favorably to the government, and I did so. *Id.* at 1385–87. However, given the Court of Appeals' imposition of the burden of proof on the government, I am no longer justified in filling the void by construing the evidence favorably to the government. *Jones II,* 97 F.3d at 1125.

As a result, the absence of a specific explanation from Stennis about why he thought section 6103(k)(6) applied, with the absence of any other evidence specifically setting forth in non-speculative terms why a reasonable agent would have thought section 6103(k)(6) applied [6], leaves a fatal evidentiary void in the government's proof on the issue of objective good faith. Recognizing that the burden of proof falls upon the United States, the government has failed to convince me that Stennis acted in objective good faith because the government's evidence about what a reasonable agent would have done in similar circumstances was deficient.

## III.

In summary, the government has failed to prove that Agent Stennis' actions met the objective standard of "good faith" because:

(1) While many elements of the "investigative disclosure" exception were uncertain, at the time the disclosure was made by Stennis, a taxpayer had a clearly estab-

---

5. I should reiterate that the pertinent question now before me is not Stennis' subjective intentions or beliefs. *Id.* at 1383 n. 18.

6. For example, although Tinsley testified that IRS agents routinely tell confidential informants various aspects about investigations, he did not

try to link his views to the statute, the regulation or the IRS manual and the facts and circumstances of this case. *Jones I,* 898 F.Supp. at 1369. In this respect, Tinsley's testimony was no more helpful than Stennis' testimony.

lished right to expect that the "investigative disclosure" exception would not be broadly interpreted to evade the overarching confidentiality provisions of section 6103(a). In short, section 6103(k)(6) was the exception and not the rule, and a taxpayer had a clearly established right to expect that a reasonable IRS agent would act in conformity with this understanding. (2) There is evidence that Stennis did not act with objective good faith when applying section 6103(k)(6) because:

(a) Stennis did not examine the specific language of the exception before he made the disclosure, and a reasonable agent would have done so;

(b) if a reasonable agent had examined the specific language of the exception, he or she would have: (i) learned that the exception could be invoked only when the facts of the specific case made it "necessary"; (ii) learned that there was no explicit authorization allowing a disclosure to an informant; (iii) been particularly cautious given these limitations;

(c) contrary to the normal practice that a reasonable agent would have followed, Stennis did not seek authorization to make the disclosure from Agent Tinsley (the agent-in-charge) and this failure both "upset" and "surprised" Tinsley.

(3) It is undisputed that Stennis failed to "consult the statutory language as interpreted and reflected in IRS regulations and manuals prior to [the] improper disclosure of return information," *Jones II,* 97 F.3d at 1125. The Court of Appeals has instructed me that this failure is "strong evidence that the interpretation of the statute was not in good faith." *Id.* Such a declaration must be given significant weight.

(4) Given the imposition of the burden of proof upon the United States, the absence of a specific explanation from Stennis about why he thought section 6103(k)(6) applied here, with the absence of any other evidence specifically setting forth in nonspeculative terms why a reasonable agent would have thought section 6103(k)(6) applied to the facts and circumstances of this case, leaves a fatal evidentiary void in the government's proof regarding objective good faith.

Accordingly,

IT IS ORDERED that:

1. the previous judgment in favor of the United States is revoked and set aside;

2. the court finds in favor of Plaintiffs and against the United States on the issue of liability;

3. this case is referred to Magistrate Judge Piester for expedited [7] progression regarding trial on damages.

---

7. This case is old and deserves to be given expedited consideration.