**Terry L. JONES, et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 4:92CV3029.**

United States District Court,
D. Nebraska.

Aug. 20, 1998.

Robert B. Creager, Anderson, Creager & Wittstruck, P.C., Lincoln, NE, Sandra L. Dougherty, Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, P.C., Omaha, NE, for Plaintiffs.

Thomas J. Monaghan, United States Attorney, Sally R. Johnson, Assistant United

States Attorney, Lincoln, NE, Michael J. Salem, Gerald A. Role, Trial Attorneys, Tax Division, Washington, DC, for Defendant.

### MEMORANDUM AND ORDER

KOPF, District Judge.

Terry and Pat Jones seek attorney fees and related costs, explicitly basing their claim upon 26 U.S.C. § 7431 (filing 207). In their brief, they also rely upon 26 U.S.C. § 7430. Although Mr. and Mrs. Jones were successful in their "wrongful disclosure" suit against the Internal Revenue Service, I will deny their motion for attorney fees and related costs because the government's position was substantially justified. In so doing, I also hold that the plaintiffs may recover "costs" under 28 U.S.C. § 1920, read in conjunction with 26 U.S.C. § 7431, provided that the plaintiffs file a properly supported bill of costs.[1]

### I.

The plaintiffs seek attorney fees, expert witness fees, and related costs. The motion does not specify the amounts sought, but the affidavits (filing 206) set forth the claims in more detail. The plaintiffs seek approximately $110,777 in attorney fees, $93,802 in fees of expert witnesses, and $2,368 in costs. (Br. Supp. Atty. Fees, Lit. Expenses & Costs.) The tortured litigation history that prompted these claims is briefly described below.

This suit was filed in January of 1992. The suit was predicated upon eight theories of recovery: (1) counts I, II and III asserted "wrongful disclosure" of tax return information against the United States; (2) count IV asserted "wrongful disclosure" of tax return information against various private persons or entities; (3) count V asserted constitutional torts against various IRS employees; (4) count VI asserted violations of the plaintiffs' civil rights and conspiracy against various private individuals and IRS employees; (5) count VII asserted a claim for return of seized property against the United States; (6) count VIII asserted a claim for declaratory and injunctive relief. (Filing 1.) Thus, seven of the eight counts were against the United States or employees of the government.[2]

After extensive motion practice reduced the scope of the suit, one claim and a portion of another survived. *See Jones v. United States,* 869 F.Supp. 747 (D.Neb.1994) (granting motion to dismiss as to count V; granting leave to amend count V; granting summary judgment on counts I, II and III as to all claims except whether the defendants on February 1, 1990, wrongfully disclosed to Ricardo A. Lucchino, Jr., that a search warrant was to be served at the plaintiffs' business premises); *Jones v. United States,* 878 F.Supp. 1290 (D.Neb.1995) (granting individual IRS defendants qualified immunity on all counts). A part of the "wrongful disclosure" claim regarding disclosure of the planned execution of a search warrant and the claim for return of seized property escaped dismissal.

The case was then bifurcated for trial. The first phase was to deal with liability and the second phase, if necessary, was to deal with damages.

After the first liability trial, I concluded that (1) IRS Special Agent Angelo Stennis violated the provisions of 26 U.S.C. § 6103(a) when he disclosed to a confidential informant on January 31, 1990, that "a search warrant [is] going to be executed. Be cautious over the next several days, and if there [are] any problems that occur[ ] or anything that [you] perceive[ ] as a threat from anyone at Jones Oil, ... let [me] know"; (2) the disclosure was not exempted by the provisions of 26 U.S.C. § 6103(k)(6); and (3) because the taxpayers failed to prove Agent Stennis' disclosure was based on a bad-faith misinterpretation of section 6103(k)(6), the United States had no liability to the plaintiffs pursuant to 26 U.S.C. § 7431(b). *Jones v. United States,* 898 F.Supp. 1360, 1387–88 (D.Neb.1995) (*Jones I*). I also found for the government on the plaintiffs' claim seeking return of seized property; that is, the undisputed evi-

---

1. The government concedes as much in its brief. (U.S. Mem. Opp'n Pls.' Mot. Atty. Fees, at 25.)

2. As for the individual defendants who were not employees of the IRS, the judge to whom this case was originally assigned granted their motion to dismiss. (Filing 22.)

dence showed that the property had been returned. *Id.* at 1388.

The Eighth Circuit Court of Appeals agreed with my conclusion that section 6103 had been violated, but reversed on the "bad-faith" issue, holding that the United States bears the burden of proving good faith under 26 U.S.C. § 7431(b), as opposed to the plaintiff bearing the burden to prove bad faith. *Jones v. United States*, 97 F.3d 1121, 1124–25 (8th Cir.1996) (*Jones II* ). The Court of Appeals did not disturb the dismissal of the seized property claim. *Id.* at 1125. Thus, the case was remanded for a determination of whether the United States had met the burden of demonstrating that Agent Stennis' actions satisfied the objective standard of "good faith." *Id.*

On remand, and based upon the same evidence presented at the earlier trial, I found that the United States failed to prove that Agent Stennis' actions met the objective standard of "good faith," revoked the previous judgment in favor of the United States, found in favor of the plaintiffs and against the United States on the issue of liability, and referred the matter to Magistrate Judge Piester for expedited progression regarding trial on damages. *Jones v. United States*, 954 F.Supp. 191, 195 (D.Neb.1997) (*Jones III* ). I believed that the government was liable to the plaintiffs because Stennis unlawfully told a confidential informant that the government intended to execute a search warrant at the plaintiffs' place of business, and the government had failed to prove "good faith." *Id.* at 193–95.

Thereafter, the parties participated in discovery, pretrial motion practice and a pretrial conference on damages. That activity was concluded, and, after a three-day bench trial on damages, I found for the plaintiffs on most, but not all, of their damage claims. *Jones v. United States*, 9 F.Supp.2d 1119 (D.Neb.1998) (*Jones IV* ).

Specifically, I found that: (1) Terry and Pat Jones were the proper persons to receive any damage award; (2) the unlawful disclosure was "with respect to" Pat Jones, as well as Terry Jones and Jones Oil; (3) since they were entitled to "actual damages," the plaintiffs were not entitled to liquidated damages;

(4) the plaintiffs proved factual and proximate causation for the damages the court awarded; (5) the plaintiffs were entitled to more than: (a) 4.5 million dollars in damages for the loss they sustained when Jones Oil failed; (b) $500,000 in damages for the loss they sustained when real estate used by Jones Oil was sold; (c) $24,000 in damages for the loss they sustained when personal property used by Jones Oil was sold; (6) the plaintiffs were not entitled to damages for the Tennessee tax refund claim ($78,854), the Jones Publishing claim ($524,766), or the "out-of-pocket" expense claim ($754,345 for trade and bank debt plus $271,000 for the balance of a working capital loan equaling $1,025,345); (7) Pat Jones was entitled to $75,000 in emotional distress damages and not the $1,000,000 she sought, and Terry Jones was entitled to $250,000 in emotional distress damages and not the $1,000,000 he sought; (8) the plaintiffs were not entitled to punitive damages (plaintiffs had requested punitive damages equal to three times the actual damages).

In finding in favor of the plaintiffs in *Jones IV,* I reviewed the evidence the parties had presented regarding the civil collection efforts of the government. I found that civil collection efforts were "conducted concurrently with the criminal investigation." *Id.* at 1134 (finding 61). I also found that the government had refunded to the plaintiffs approximately $415,000 at the conclusion of the investigation. *Id.*

## II.

The plaintiffs base their claim to attorney fees and related expenses on 26 U.S.C. § 7431. The plaintiffs also rely upon 26 U.S.C. § 7430. Accordingly, we must first examine section 7431. Then we must examine section 7430. I proceed to those tasks next.

### A. Section 7431

Section 7431 of the Internal Revenue Code allows recovery of the costs of an action brought to remedy a wrongful disclosure violation of section 6103. The statute states in pertinent part that: "If any officer or employee of the United States knowingly, or by reason of negligence, ... discloses any re-

turn or return information with respect to a taxpayer in violation of any provision of section 6103," then "upon a finding of liability" the United States "shall be liable to the plaintiff" for, among other things, "the costs of the action." 26 U.S.C. § 7431(a)(1) & (c)(2).

■ This case obviously involves a wrongful disclosure under section 6103. Consequently, the first question becomes whether section 7431 "costs" include attorney fees and expenses advanced by lawyers and litigants (like fees paid to consultants) which exceed those expenses normally taxed as "costs" under 28 U.S.C. § 1920.[3]

■ Since attorney fee award statutes "'must be strictly construed in favor of the United States,'" *McLarty v. United States*, 6 F.3d 545, 548 (8th Cir.1993) (quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991)), the word "costs" should be given its normal limited meaning. In other words, when section 7431 uses the word "costs," the statute refers only to costs taxable pursuant to 28 U.S.C. § 1920 and nothing more. *See also* Allen Karnes & Roger Lirely, *Striking Back at the IRS: Using Internal Revenue Code Provisions to Redress Unauthorized Disclosures of Tax Returns or Return Information*, 23 Seton Hall L.Rev. 924, 956 (1993) ("Section 7431 allows recovery of the costs of the action. The term 'costs' does not include attorney's fees.") (footnotes and citations omitted).[4] As a result, the plaintiffs cannot predicate their claim for attorney fees and related nontaxable costs upon section 7431.

### B. Section 7430

Since section 7431 does not entitle the plaintiffs to attorney fees and expenses exceeding those customarily taxed as costs, the next question is whether section 7430 provides the plaintiffs with the relief they seek. That statute states: "In any ... court proceeding which is brought ... against the United States in connection with the determination, collection, or refund of any tax, ...

the prevailing party may be awarded a judgment" for "reasonable litigation costs incurred in connection with such court proceeding." 26 U.S.C. § 7430(a)(2).

Subject to rate limitations, the statute defines "reasonable litigation costs" to include court costs, expert fees and attorney fees. 26 U.S.C. § 7430(c)(1)(A) & (B). Thus, section 7430 provides the plaintiffs with a potential remedy if this case was a "court proceeding ... *in connection with the determination, collection, or refund of any tax* ...." *Id.* § 7430(a) (emphasis added).

### 1. "In Connection With" the Determination or Collection of Tax

■ The government argues that the underlying dispute here pertained to the handling of a criminal tax investigation. Thus, the government argues that the matter in dispute was not "in connection with the determination, collection, or refund of any tax." Consequently, the government argues that section 7430 does not apply. As authority for this proposition, the government relies upon *McLarty v. United States*, 6 F.3d at 548 (application for pro hac vice admission to practice law was not in connection with determination, collection, or refund of any tax; holding that successful section 6103 suit for wrongful disclosure predicated upon a wrongful disclosure during pro hac vice admission process did not entitle taxpayer to section 7430 fees).

I reject the government's argument based upon the plain language of the statute and the obvious differences between this case and *McLarty*. I turn first to the meaning of the words "in connection with."

■ The dispute that gave rise to this case—the disclosure of the pending execution of a search warrant at the plaintiffs' business premises—was directly predicated upon the government's attempt to "determine" and "collect" a tax that the government thought the plaintiffs owed. The plain and ordinary

---

3. Section 1920 provides that the court "may tax as costs" certain enumerated items upon the filing and allowance of a "bill of costs."

4. Thus, the plaintiffs must file a bill of costs with the clerk pursuant to our local rules of practice

to recover section 1920 costs. NELR 54.1, at 828 (West 1998). I have no occasion to decide now whether the plaintiffs are entitled to particular costs since that matter is not now before me.

meaning of the "in connection with" language of section 7430 does not require the wrongful disclosure to take place *in* tax litigation between the government and the taxpayer. If the wrongful disclosure litigation *arises out of* the government's tax determination or collection efforts, a successful plaintiff may be entitled to attorney fees under section 7430 even though the disclosure did not take place *in* tax litigation. *See McLarty*, 6 F.3d at 548 & n. 4 ("[W]e agree with the many cases that have applied § 7430 *broadly to litigation arising out of the government's tax determination and collection efforts*.") (citations omitted) (emphasis added).

In other words, section 7430 applies "when the tax returns have been inappropriately released *in the course of a tax-related proceeding or investigation*." *Scrimgeour v. Internal Revenue*, 149 F.3d 318 (4th Cir.1998) (following and construing *McLarty*; holding that erroneous release of tax returns to a private person pursuant to a subpoena in private litigation about the management of a trust was not in the course of a tax proceeding) (emphasis added). *See also* Allen Karnes & Roger Lirely, *Striking Back at the IRS: Using Internal Revenue Code Provisions to Redress Unauthorized Disclosures of Tax Returns or Return Information*, 23 Seton Hall L.Rev. at 956 n.209 (observing that the government continues to argue that § 7430 is inapplicable to § 7431 actions; stating that the government's argument "has not been successful") (citations omitted).

Moreover, the refusal of the *McLarty* court to allow section 7430 fees to the taxpayer does not help the government in this case. *McLarty* involved a much different fact situation than is present in this case; that is, *McLarty* involved a case where there was no relationship between the tort of disclosure and the government's effort to apply the tax laws to the victim.

In *McLarty*, a Georgia lawyer sought permission to practice before a federal court in Minnesota. The lawyer sought to represent a client charged with a tax crime. In opposing the motion for admission to practice law, the government wrongfully disclosed the lawyer's prior tax problems.

The Court of Appeals held that the wrongful disclosure in the course of a proceeding to determine whether someone should be admitted to practice law "was completely unrelated" to a tax proceeding involving that person. *McLarty*, 6 F.3d at 548. Thus, the wrongful disclosure was not "in connection with" the determination, collection or refund of taxes of the lawyer and section 7430 did not apply. Here, unlike the situation in *McLarty*, the government's effort to collect unpaid taxes from the Joneses was intimately connected with the wrongful disclosure of the Joneses' tax return information. As a result, *McLarty* does not preclude the application of section 7430; it supports it.

The government also argues that section 7430 does not apply because the execution of the search warrant and the resulting wrongful disclosure took place in the context of a criminal case. The government's argument is based upon a sentence taken from *McLarty*. It is true that *McLarty* made the following statement: "[W]e will not disregard § 7430's limiting language and apply it to a wrongful disclosure claim that was completely unrelated to any *civil tax proceeding*." *Id.* at 548 (emphasis added).

Nevertheless, the government reads too much into the word "civil" and too little into the words "completely unrelated." *McLarty* only required a relationship between a civil tax determination or collection proceeding and the wrongful disclosure. The fact that the tax determination or collection procedure *also* had a criminal aspect is irrelevant to the application of section 7430.

The wrongful disclosure in this case took place in the context of an investigation that had both civil and criminal aspects. As evidenced by the fact that the plaintiffs received a refund of $415,000 at the end of the investigation, the wrongful disclosure here was *not* "completely unrelated" to a "civil" tax proceeding. As a matter of fact, the refund resulted from a "civil examination which was being conducted concurrently with the criminal investigation." *Jones IV*, 9 F.Supp.2d at 1134 (finding 61). Consequently, the required relationship between the wrongful disclosure and a *"civil* tax proceeding" under *McLarty* is well established in the record.

## 2. Conditions for Recovery Under Section 7430

The version of section 7430 that is applicable to this case requires the plaintiffs to prove three things in order to recover attorney fees and costs. 26 U.S.C. § 7430(c)(4) (1989) (defining "prevailing party").[5] *See Kenagy v. United States*, 942 F.2d 459, 463 (8th Cir.1991). First, the plaintiff must prove that the government's position was "not substantially justified." 26 U.S.C. § 7430(c)(4)(A)(i). Second, the plaintiff must prove that the plaintiff "substantially prevailed" as to either the amount or most significant issue in controversy. *Id.* at § 7430(c)(4)(A)(ii)(I) & (II). Finally, the plaintiff must prove that the plaintiff meets certain net worth requirements and an individual must establish that his or her net worth did not exceed $2,000,000 at the time the civil action was commenced. *Id.* at § 7430(c)(4)(A)(iii) (incorporating 28 U.S.C. § 2412(d)(1)(B)).[6]

■ Pat and Terry Jones substantially prevailed as to both the amount in controversy and the most significant issue in controversy. Although the government makes a number of inventive arguments regarding the "substantially prevailed" element, a judgment against the government exceeding $5,000,000 for a wrongful disclosure surely satisfies the "substantially prevailed" language of the statute.

■ Moreover, the record adequately establishes that neither Terry nor Pat Jones had a net worth exceeding $2,000,000 at the time suit was commenced. In this regard, the proper parties to focus upon for net worth purposes are Terry and Pat Jones since they are ones who will receive the proceeds of the judgment. *Jones IV*, 9 F.Supp.2d at 1135.

## 3. Substantially Justified

Because Terry and Pat Jones have proven two of the three requirements for recovery under section 7430, the remaining question is whether the government's position was substantially justified. After careful consideration, I conclude that the government's position was in fact and in law substantially justified. My reasons for this decision are set forth below.

■ In order to be "substantially justified," the position of the government must be " 'clearly reasonable, well founded in law and fact, [or] solid though not necessarily correct.' " *Kenagy*, 942 F.2d at 464 (quoting *United States v. Estridge*, 797 F.2d 1454, 1459 (8th Cir.1986)). Though not correct, the government's position in both the liability and damage trials was legally and factually "clearly reasonable." [7]

■ As to the first liability trial, there was a good-faith dispute about what Stennis said to the confidential informant. Stennis denied making a disclosure. Yet another government agent (Tinsley) said that Stennis had told him that Stennis had disclosed the pending execution of the search warrant to an informant. *Jones*, 869 F.Supp. at 759 (denying summary judgment on search warrant disclosure issue because of differences in testimony of Stennis and Tinsley); *Jones I*, 898 F.Supp. at 1377–79 (comparing and reconciling the testimony of Stennis and Tinsley). It was reasonable as a factual matter for the government to present the two different government employee versions of what happened so the court could decide which version or combination of versions should be accepted.

The same is true for the legal position of the government at the first liability trial. The government relied upon, and I followed,

---

**5.** This section was amended in 1996. Act of July 30, 1996, Pub.L. No. 104–168 §§ 701(a)-(c)(2), 110 Stat. 1463, 1464 (codified as amended at 26 U.S.C. § 7430(c)(4)(A)(i)-(iii) & (B) (Cum.Supp. 1998)). Pub.L. No. 104–168 § 701(d) made the amendments applicable to proceedings commenced after July 30, 1996. *See* 26 U.S.C. §§ 6404 & 7430 notes (Cum.Supp.1998). Because this action was commenced prior to July 30, 1996, we apply the law as it previously existed.

**6.** Section 2412(d)(1)(B) refers to a "party," and section 2412(d)(2)(B) defines the net worth limitations for various types of parties.

**7.** While the plaintiffs have the burden of proof on this issue, my decision would be the same if the government had the burden of proof.

Sixth and Tenth Circuit precedent holding that it was the plaintiffs' burden to show that Agent Stennis did not act in "good faith." *Jones I*, 898 F.Supp. at 1374 (citing *Davidson v. Brady*, 732 F.2d 552, 553 (6th Cir. 1984), and *Fostvedt v. United States*, 824 F.Supp. 978, 984–85 (D.Colo.1993), *aff'd*, 16 F.3d 416 (10th Cir.1994) (tbl.)). It was reasonable for the government to rely upon this precedent until the Eighth Circuit explicitly declined to follow it. *See Jones II*, 97 F.3d at 1124–25 & n. 9 (declining to follow *Davidson* and *Fostvedt* ).

Still further, at the second liability trial [8], the government still had a reasonable argument even though the burden of proof on "good faith" had been imposed on the government by the Court of Appeals and there were no longer factual disputes. In *Jones I*, 898 F.Supp. at 1383–88, I had stressed that the absence of advice telling agents whether and how to make disclosures to confidential informants argued in favor of good faith. Thus, even though the Eighth Circuit Court of Appeals switched the burden of proof, it was, nevertheless, reasonable for the government to argue, as I had originally found, that the undisputed absence of advice to agents about whether and how to make disclosures to informants proved that Stennis acted in good faith.

■ With regard to the damage trial, the government's position was also well-founded. As measured against the prayer of the complaint, the government saved itself millions of dollars by aggressively litigating the damage issue.[9] Examples will illustrate the point.

The plaintiffs made three claims for economic damages that the court rejected. I held that the plaintiffs were not entitled to damages for the Tennessee tax refund claim, *Jones IV*, 9 F.Supp.2d at 1144, the Jones Publishing claim, *id.* at 1146–47 and the "out-

of-pocket" expense claim. *Id.* at 1146–48. These three claims exceeded $1,600,000.

Terry and Pat Jones each also argued that they were entitled to emotional distress damages of $1,000,000. Initially, there was a good-faith dispute about whether emotional distress damages of any kind could be recovered under section 7431. *Id.* at 1149–50 (citing *Rorex v. Traynor*, 771 F.2d 383, 387 (8th Cir.1985)). In addition, I awarded Terry and Pat Jones $1,675,000 less than they sought for emotional distress.

Finally, the plaintiffs asked for punitive damages equal to three times the actual damages. If I had awarded the requested relief, such an award would have cost the government more than 15 million dollars. Instead, I denied the plaintiffs' punitive damage claim. *Id.* at 1153.

In summary, the positions advanced by the government throughout this case were tough yet well-founded. Government's counsel, in a properly zealous fashion, presented legal and factual arguments that were .solid and reasonable. This was a very difficult case presenting novel issues throughout each stage of the litigation. Accordingly, I am persuaded that the government's conduct was substantially justified throughout.

IT IS ORDERED that the plaintiffs' motion for attorney fees and costs (filing 207) is denied without prejudice to the filing of a bill of costs pursuant to 28 U.S.C. § 1920.

### JUDGMENT

Judgment is entered for the plaintiffs and against the defendant United States of America for actual damages plus costs and post-judgment interest as provided by law on the plaintiffs' wrongful disclosure claim regarding the disclosure of the pending execution of a search warrant to a confidential informant. Otherwise, the plaintiffs shall

---

8. The parties agreed that the second trial would be based upon the record made at the first trial without presentation of additional evidence. Hence, the government did not put the plaintiffs to the additional expense of presenting liability evidence a second time.

9. If one examines the plaintiffs' settlement offers (filing 211), it also appears that the government

saved money by litigating the damage issue. The lowest plaintiffs' offer (which came February 9, 1998) was 5.5 million dollars plus attorney fees and costs with the stipulation that all the settlement proceeds were tax-free. (Filing 211, Ex. D.) The court awarded approximately 5.43 million dollars (measured as of January 31, 1998), and no attorney fees.

take nothing. The amount of actual damages that shall be paid by the United States and the names of the plaintiffs entitled to receive the actual damages are set forth below:

Terry Jones and Pat Jones, jointly, as their interests may appear, shall be paid:

(a) damages for the demise of Jones Oil Company, to wit: (1) $4,516,083 (representing the damages as of January 31, 1998); (2) plus a sum equivalent to interest on $4,516,083 at 5.232 percent, computed in accordance with 28 U.S.C. § 1961(b) from February 1, 1998, to the date of judgment (representing the damages brought forward from February 1, 1998, until the date of judgment).

(b) damages for the forced sale of real estate, to wit: (1) $565,356 (representing the damages as of January 31, 1998); (2) plus a sum equivalent to interest on $565,356 at 5.232 percent, computed in accordance with 28 U.S.C. § 1961(b) from February 1, 1998, to the date of judgment (representing the damages brought forward from February 1, 1998, until the date of judgment);

(c) damages for the forced sale of personal property, to wit: (1) $24,760 (representing the damages as of January 31, 1998); (2) plus a sum equivalent to interest on $24,760 at 5.232 percent, computed in accordance with 28 U.S.C.1961(b) from February 1, 1998, to the date of judgment (representing the damages brought forward from February 1, 1998, until the date of judgment).

Pat Jones shall be paid damages for emotional distress, to wit: $75,000.

Terry Jones shall be paid damages for emotional distress, to wit: $250,000.

The plaintiffs are not entitled to attorney fees and related costs. The plaintiffs are entitled to, and the United States shall pay, those costs properly taxed under 28 U.S.C. § 1920.