# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-1047/1066

_____

Terry L. Jones and Patricia K. Jones;    \*
Jones Publishing, Inc.; Jones Oil    \*
Company, Inc.; Jones Petroleum    \*
Company, A Partnership; and J. O.    \*
Holding,  Formerly Known as Jones Oil    \*
Company, Inc.,    \*
    \*  Appeals from the United States
    Appellees/Cross-Appellants,    \*  District Court for the District of
    \*  Nebraska.
    v.    \*
    \*
United States of America,    \*
    \*
    Appellant/Cross-Appellee.    \*

_____

Submitted:  October 21, 1999

Filed:  March 24, 2000

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and FAGG, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Terry Jones and Patricia Jones sued the United States for wrongfully disclosing tax information in violation of 26 U.S.C. § 6103.  After the district court granted summary judgment in the government's favor on the ground that Agent Angelo Stennis acted in good faith in telling a confidential informant about an impending search of

Jones Oil Company, see Jones v. United States, 898 F. Supp. 1360 (D. Neb. 1995), we reversed and remanded for further proceedings. See Jones v. United States, 97 F.3d 1121 (8th Cir. 1996). We held that it was the government's burden to prove that its agent acted in good faith, and that "[a]n agent's failure to consult the statutory language as interpreted and reflected in IRS regulations and manuals prior to an improper disclosure of return information is strong evidence that the interpretation of the statute was not in good faith," id. at 1125.

On remand, the district court held that the government had failed to prove that Agent Stennis acted on a good-faith but erroneous interpretation of § 6103. See Jones v. United States, 954 F. Supp. 191 (D. Neb. 1997). In reaching this result, the district court made four observations. First, the court noted that although many elements of the relevant exception to § 6103 are not clearly established, investigative disclosures, see § 6103(k)(6), are clearly the exception, not the rule. See Jones, 954 F. Supp. at 193. Second, it opined that if Agent Stennis had looked at the language of § 6103(k)(6), he would have learned that disclosure was permitted only when "necessary," and that there is no explicit authorization for disclosures to informants. See Jones, 954 F. Supp. at 193. Third, it found that Agent Stennis did not seek authorization from Agent Stephen Tinsley (the agent in charge of the investigation), which upset and surprised Agent Tinsley, and that Agent Tinsley's reaction to Agent Stennis's failure to seek authorization suggested that Agent Stennis was not acting objectively reasonably. See id. at 194. Finally, it observed that none of the government's witnesses, including Agent Stennis, was able to articulate why disclosing the search warrant information to the informant was "necessary," see § 6103(k)(6). See Jones, 954 F. Supp. at 194.

Because the district court held that Agent Stennis did not act in good faith, it then proceeded to determine what damages the Joneses had suffered. The court found that the confidential informant had alerted a television station of the impending search of Jones Oil Company, that the attendant publicity had caused the demise of the company, and that the Joneses had suffered consequential damages in the amount of $5,431,199.

See Jones v. United States, 9 F. Supp. 2d 1119, 1154 (D. Neb. 1998). The court refused, however, to award punitive damages, see id. at 1153, or attorneys' fees to the Joneses, see Jones v. United States, 9 F. Supp. 2d 1154, 1161 (D. Neb. 1998).

All parties appeal, and we affirm in part and reverse in part.

## I.

This case has a long and complicated history. It was filed over seven years ago and has generated multiple published opinions, perhaps because of the virtually intractable murkiness of the applicable substantive rules and the prolixity of relevant regulations.

As we have already noted, in an earlier incarnation of this case we reversed the district court's determination that it was part of the plaintiff's case to prove that the defendant did not act in good faith. The government still maintains that we were wrong in that determination, and were it not for the fact that it is the law of the case, we might be inclined to revisit the issue. But in the end the issue is almost certainly a red herring, because the burden of proof in a civil case serves to determine who prevails only if the evidence is in equipoise. The rule simply decides, in other words, who wins if there is a tie. We do not think that anyone seriously contends here that there is a evidentiary tie, so we pass over the point temporarily, to return to it at a later juncture and in another context.

More troublesome is what we said in our previous opinion about what evidence is relevant on the question of good faith. As we already indicated, we directed the district court's attention to Agent Stennis's failure, if any, to consult the relevant statutory provision in connection with a determination of his good faith. On remand, the district court did what we instructed it to do and inquired into the efforts that Agent Stennis made to determine the legality of his disclosure.

The government again maintains that we erred in our first effort to discern the principles of liability appropriate to this case. Perhaps the government is correct: While the efforts of governmental agents to discover applicable legal principles may well be germane to the question of punitive damages, a good case can be made that those principles are not relevant on the matter of liability. With respect to liability, the proper focus is arguably on what an objectively reasonable agent could have thought about the legality of his acts had he in fact known clearly established law, whether or not he acted to discover what it was. That is what we held in Rorex v. Traynor, 771 F.2d 383, 387 (8th Cir. 1985). What government agents knew about the circumstances in which they acted is, of course, pertinent to the matter of liability. As far as the law is concerned, however, we have held that what matters is what " 'a reasonable person would have known' " about " 'clearly established statutory or constitutional rights.' " Id. at 387, quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

We decline, however, because of the law of the case doctrine, to revisit the matter. We note, moreover, that even if Agent Stennis's efforts to discover what the law allowed him to do are put out of the picture, the government failed to carry its burden of showing that Agent Stennis acted in good faith. The applicable statutory provision, see 26 U.S.C. § 6103(k)(6), allows for the disclosure of information "only in such situations and under such conditions as [the Secretary of the Treasury or the Secretary's delegate] may prescribe by regulation," and the short of it is that the Secretary has not prescribed any regulation that allows for the disclosure of information in the circumstances of this case. It was thus clearly established at the time of these events that it was unlawful for Agent Stennis to disclose the information that he did, and the district court was therefore correct in finding against the government on the liability question.

## II.

The government also argues that the district court erroneously included prejudgment interest in its damages award. We agree.

-4-

The district court based its damages award on the testimony of the Joneses' expert, John Chapin, who analyzed the damages that resulted from the demise of Jones Oil Company, the forced sale of certain real property, and the forced sale of certain personal property. In calculating the value of Jones Oil Company at the time of its demise, that is, in 1989, Mr. Chapin capitalized the company's income stream and arrived at a figure of $2,197,288. Mr. Chapin then opined that as of the date of trial, the damages amounted to $4,516,085, because that was the amount that the Joneses would have had as of the date of trial if their 1989 loss had been invested at the "Baa" bond rate. Mr. Chapin performed similar calculations with respect to the real estate and personal property that was sold. He concluded that the real property was sold for a loss of $335,485, which amount, by the time of trial, would have been $565,356 if invested at the "Baa" bond rate. He also opined that the personal property was sold at a loss of $13,345, which amount would have been worth $24,760 at the time of trial if properly invested.

All parties concur that it is improper to award prejudgment interest in the circumstances of this case, see Library of Congress v. Shaw, 478 U.S. 310, 314 (1986), but the Joneses argue that the award contains no prejudgment interest. We agree, however, with the government's contention that the increment that Mr. Chapin added to the losses that occurred when the company failed and its assets were sold was indeed interest. Perhaps if Mr. Chapin had stated as his opinion that the value of the business and the property would have increased a certain amount in the relevant interim, that increment would have been recoverable. But see Restatement (Second) of Torts 2d, § 927(1)(a), at 534 (1979), where it is said that the amount recoverable for the wrongful destruction of a thing is its value at the time of its destruction. In any event, that is not our case. In our case, the district court awarded amounts that compensated the Joneses for the loss of investment capital between the time of the loss and the date of trial. This is nothing more than damages for the delay in receiving money and, we think, cannot be properly characterized as anything but interest. The character or nature of interest

does not change simply because it is called by another name. See Shaw, 478 U.S. at 321-22. The judgment must therefore be reduced by $2,560,081.

We detect another, related error in the damages calculation. As the government points out, the district court, following Mr. Chapin's example, awarded the Joneses an amount that was in truth prejudgment interest from the date of Mr. Chapin's evaluation to the date of judgment. Under 28 U.S.C. § 1961(a), interest is allowable on any money judgment "from the date of the entry of the judgment," and under 28 U.S.C. § 1961(b), the Joneses are entitled to interest on their judgment, properly reduced, from the time of entry "to the date of payment." On remand, the Joneses may seek interest in accordance with this last provision.

III.

The Joneses cross-appeal the district court's orders denying them punitive damages and attorneys' fees, but we agree with the district court's conclusions on these matters.

Punitive damages are recoverable only "in the case of a willful ... disclosure or ... [a] disclosure which is the result of gross negligence," see 26 U.S.C. § 7431(c)(1)(B)(ii). The district court supported its refusal to award punitive damages with a number of factual findings, all of which we must uphold if they are not clearly erroneous, which none of them is. The court found, for instance, that Agent Stennis disclosed the impending search of the Jones Oil Company premises in an effort to protect the informant and not to harm the Joneses, and that Agent Stennis had reason to trust the informant. This last fact, we think, is highly significant. These findings, and others, are entitled to play a substantial part in the calculation of fault, and we see no error, legal or otherwise, in the district court's conclusion that Agent Stennis did not act willfully or in a grossly negligent fashion.

Nor is there any error in the denial of attorneys' fees to the Joneses. We pass over the question of whether 26 U.S.C. § 7430(a) even applies to the present circumstances, although it is a nice question whether this case qualifies as a "court proceeding ... in connection with the determination, collection, or refund of any tax." While, as the district court observed, the disclosures at the heart of the case might satisfy the "in connection with" language of the statute, that is not relevant. The appropriate question is whether the case itself, not some disclosure, is one "in connection with" the statutory list. It is not obvious that the government is wrong in taking the position that the statute simply does not apply.

Even if the statute does apply, however, fees are not available if the government's position on the merits of the case was "substantially justified," see 26 U.S.C. § 7430(c)(4)(B)(i), and, as the district court pointed out, the government's position had ample justification in this case. At the first trial, Agent Stennis asserted that he never told the informant about the search warrant at all; surely the government was entitled to press this absolute defense without incurring liability for fees. The government also took the position, which we have already said at least makes good sense, and may even be right, that the Joneses had the burden to show that Agent Stennis did not act in good faith. In addition, at the second trial, the government did not act in bad faith by arguing Agent Stennis's subjective good faith, because our court indicated that that issue was central to the liability question. Finally, the district court quite rightly concluded that the government's aggressive resistance to the Joneses' various and excessive damages claims, including the claim for punitive damages, was entirely warranted.

For the reasons indicated, we remand to the district court for a recalculation of the damages award. We affirm the judgment of the district court in all other particulars.

HEANEY, Circuit Judge, concurring in part and dissenting in part.

I concur in Part II of the majority's opinion. It is clear to me that Agent Stennis did not act in good faith when he disclosed the search warrant information to his informant, and that the district court's damages award included unlawful prejudgment interest. I must, however, part company with my colleagues on their analysis of punitive damages and attorneys' fees.

## I. Punitive Damages

Punitive damages may be awarded based on a wrongful disclosure of tax return information if the disclosure is willful or grossly negligent. See I.R.C. § 7431(c)(1)(b) (1999). I am convinced that the district court erred in concluding that Agent Stennis's disclosure was not at least grossly negligent.

First, the search warrant, the subject of Agent Stennis's disclosure, was signed on January 31, 1990 at 11:00 a.m. See Jones v. United States, 898 F. Supp. 1360, 1367 (D. Neb. 1995). The warrant was under seal and gag orders were in place, preventing all agents from revealing any information about the warrant prior to its scheduled execution the following morning. However, in disregard of the gag order, Agent Stennis disclosed protected information to his informant, Ricardo Lucchino, shortly after the warrant was signed. See id.

Second, Agent Stennis knew that the disclosure likely was unauthorized. He testified that "[y]ou're not allowed to tell anyone anything, anything more than you need to disclose to get the information you wish to receive." (Tr. at 246-47.) Stennis also testified that he knew I.R.C. § 6103 provided that tax return information cannot be disclosed unless a provision permits such disclosure and that he knew of no provision relating to confidential informants.

Third, Agent Stennis never consulted any authority for guidance on whether he was permitted to tell Lucchino of the warrant, choosing instead to rely on his

experience. Stennis testified that he did not review the applicable statute, read the IRS regulations, consult the IRS manual, or discuss with his supervisor, Agent Stephen Tinsley, his intent to disclose the information to the informants. By failing to consult any authority, Agent Stennis completely disregarded the likelihood his disclosure was prohibited.

Fourth, Agent Stennis knew that Lucchino had a financial incentive to harm Jones Oil. Lucchino is a former Jones Oil employee, who left the company on unfriendly terms after being accused of misappropriating proprietary information to a competitor. See Jones v. United States, 9 F. Supp.2d 1119, 1139 (D. Neb. 1998). At the time of the investigation, Lucchino worked for a Jones Oil competitor. See id. Stennis testified that "you trust [any] informant only up to a certain point, and I would have a problem with telling an informant we are going to do this at this time, knowing what his or her reaction would be." (Tr. at 246.) Agent Stennis knew that providing search warrant information to any informant is generally unwise, and he knew of Lucchino's hostile relationship with Jones Oil. Although Stennis may not have known that Lucchino would contact the news media, he knew or should have known that disclosing such information to Lucchino could be problematic.

Fifth, Agent Stennis testified that he disclosed the search warrant information to protect the informants and ensure that they could provide information on future investigations. However, Stennis knew that the informants would not be at Jones Oil when the warrant was executed. Furthermore, he never discussed with Agent Tinsley his concern for the informants' safety, something that "surprise[d]" and "upset" Tinsley. (Tr. at 218.) Even if safety was a legitimate concern, other alternatives to disclosure, such as placing the informants in a safe house, were available to protect the informants' safety.

By failing in all respects to ensure that he was authorized to disclose the search warrant information, Agent Stennis demonstrated a reckless disregard for the Joneses'

rights and, therefore, was grossly negligent. Accordingly, the Joneses are entitled to punitive damages.

## II. Attorneys' Fees

I also part with the majority on its analysis of attorneys' fees. Under I.R.C. § 7430(a), "reasonable litigation costs," including attorneys' fees, may be awarded if incurred in an administrative or court proceeding brought against the United States "in connection with the determination, collection, or refund of any tax, interest, or penalty." Although the majority does not address the applicability of this section, a careful review of the facts reveals that § 7430 indeed applies. Agent Stennis's disclosure was made in the course of the government's effort to ascertain and collect unpaid taxes from Jones Oil and the Joneses. The search warrant was executed during the government's criminal investigation into Jones Oil's corporate income tax liability, particularly motor fuel excise taxes, and into Terry and Patricia Jones's tax liability. The investigation focused on determining whether Jones Oil was evading corporate taxes and on whether the Joneses were evading income taxes. Because the disclosure occurred during a tax evasion investigation, the Joneses' action against the government was brought in connection with determining and collecting taxes from Jones Oil and the Joneses.

Under § 7430, attorneys' fees can be awarded only if the government's position was not substantially justified. See I.R.C. § 7430(c)(4)(B)(i). It certainly was not in this case.

The government argued at trial that even if Agent Stennis disclosed the information in violation of § 6103, he did so in good faith, intending to protect his informants' safety. However, the facts of this case, as highlighted by the majority and in the punitive damages section of this dissent, demonstrate the egregiousness of Agent Stennis's actions and clearly show that he did not act in good faith. In addition, § 6103(k)(6) only allows disclosures in circumstances permitted by regulation, and the

-10-

applicable regulations do not authorize disclosure to protect the safety of a confidential informant, see 26 C.F.R. § 301.6103(k)(6)-1.

In addition, during the damages trial, the government offered little evidence to contest the damages alleged by the Joneses. It offered no expert testimony on the issue, nor did it question the Joneses' expert on his method for calculating damages. In fact, the government's expert, who did not testify at trial, agreed with the Joneses' method for valuing the loss of Jones Oil. Furthermore, the government did not contest the damages calculation on prejudgment interest grounds until after trial, first raising the issue in a post-trial reply brief.

Agent Stennis clearly did not act in good faith. Moreover, the government offered little evidence during the damages trial and did not contest the Joneses' damages analysis. For these reasons, the government was not substantially justified in its position, and attorneys' fees should have been awarded.

Thus, I concur in part and respectfully dissent in part.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.